*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 48**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHELLE COROLES,
*Appellant,*

*v.*

STATE OF UTAH, UNIVERSITY HEALTH CARE, UNIVERSITY OF UTAH STATE
HOSPITALS AND COMMUNITY, PARKWAY HEALTH CENTER,
UNIVERSITY OF UTAH MEDICAL CENTER, and UNIVERSITY OF UTAH
HEALTH SCIENCES,
*Appellees.*

No. 20130217
Filed April 21, 2015

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 20130217

Attorneys:

Karra J. Porter, Nathan D. Adler, Sarah E. Spencer,
Salt Lake City, for appellant

Rodney R. Parker, Elizabeth L. Willey, Terence L. Rooney,
Salt Lake City, for appellees

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PARRISH, and JUDGE ORME joined.

JUSTICE NEHRING did not participate herein due to his retirement;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 In this medical malpractice suit, the district court struck two sets of proposed expert witnesses retained by the plaintiff. The court struck the first set of witnesses because the plaintiff's attorney revealed confidential information to them about the proceedings before a mandatory prelitigation panel. The court also struck two replacement expert witnesses because they were designated after the cutoff date established by the scheduling order. Because the plaintiff was then left without any experts to establish the necessary elements of her malpractice claim, the district court granted summary judgment in favor of the defendants and dismissed the plaintiff's claim.

¶2 The plaintiff appeals from the judgment, arguing that the district court erred by striking both the original expert witnesses and the replacement experts. We agree with the plaintiff on both counts. The court erred by striking the original experts without inquiring whether the confidential information revealed to them influenced their opinions. The court also erred when it excluded the second set of witnesses because they were designated after the cutoff date. Although courts have discretion to sanction a party for violating a scheduling order, the district court applied the wrong rule when it sanctioned the plaintiff. Moreover, the sanction of witness exclusion was not warranted in this case.

## BACKGROUND

¶3 After suffering from symptoms including coughing, wheezing, and skin paleness, Thomas Coroles sought treatment at a medical clinic. He was diagnosed with the flu, prescribed an inhaler and cough syrup, and told that his symptoms would become worse before he got better. A few days later, Mr. Coroles died from pneumonia.

¶4 Mr. Coroles's wife, Michelle Coroles, decided to sue several entities she believed to be responsible for her husband's death. As required by the Utah Health Care Malpractice Act (Malpractice Act), Mrs. Coroles first presented her malpractice claims to a prelitigation panel and participated in an evidentiary hearing before the panel. *See* UTAH CODE §§ 78B-3-412, -416. After completing the required proceedings before the panel, Mrs. Coroles

initiated a lawsuit against the State of Utah and medical facilities associated with the State that she alleged were liable for Mr. Coroles's death.

¶5 During the ensuing litigation, Mrs. Coroles served witness designations and expert reports for two expert medical witnesses. The designations were made on the final day permitted by the scheduling order. Each of the reports contained an introductory letter Mrs. Coroles's counsel had sent to the medical experts before they were retained. Both letters referenced some opinions allegedly expressed by members of the prelitigation panel.

¶6 Two months after Mrs. Coroles designated her experts and served the reports, the defendants moved to strike the designations. The defendants argued that when Mrs. Coroles revealed information to her experts about the alleged opinions of the prelitigation panel, she violated the confidentiality provision of the Malpractice Act, which provides that the proceedings before the prelitigation panel are "confidential, privileged, and immune from civil process." *Id.* § 78B-3-416(1)(d). The defendants asserted that the appropriate remedy for this violation was the exclusion of the two experts. They also moved for summary judgment, arguing that because Mrs. Coroles's experts should be stricken, she could no longer produce the necessary expert testimony to support her medical malpractice claim.

¶7 Two weeks later, Mrs. Coroles filed an opposition to the defendants' motion to strike the experts. She also served a supplemental expert witnesses designation that named two additional expert witnesses. Mrs. Coroles argued that even if the district court elected to strike the initial expert witnesses, the court should not grant summary judgment because the supplemental experts could testify at trial. The defendants subsequently moved to strike the supplemental experts, arguing that the supplemental expert designation was untimely under the scheduling order.

¶8 The district court ruled that because the two original medical experts had been exposed to confidential information about the prelitigation proceedings, they could not testify at trial. It also concluded that the defendants had been prejudiced by the late designation of the supplemental experts and barred them from testifying. Because these two rulings deprived Mrs. Coroles of any expert witnesses to testify at trial, the district court granted summary judgment in favor of the defendants. Mrs. Coroles appealed from the judgment against her.

## ANALYSIS

## I. EXCLUSION OF THE ORIGINAL EXPERT WITNESSES BECAUSE OF THEIR EXPOSURE TO CONFIDENTIAL INFORMATION ABOUT THE PRELITIGATION PANEL PROCEEDINGS

¶9      A plaintiff may not file a lawsuit for medical malpractice until he or she satisfies the prelitigation requirements of the Malpractice Act. UTAH CODE § 78B-3-412(1). First, the plaintiff must serve all defendants with a "notice of intent to commence an action" at least ninety days before filing the lawsuit. *Id.* § 78B-3-412(1)(a). Second, the plaintiff must participate in a hearing before a prelitigation panel composed of a lawyer, a licensed healthcare provider, and a lay panelist and obtain a certificate of compliance from the Utah Division of Occupational and Professional Licensing. *Id.* §§ 78B-3-412(1)(b), -416(4), -418(3). The division will issue a certificate of compliance if (1) the prelitigation panel concludes that the plaintiff's claim "has merit," (2) the plaintiff files an "affidavit of merit" signed by a licensed health care provider, (3) the defendant fails to reasonably cooperate in scheduling a prelitigation hearing within the allotted time, or (4) the plaintiff and the defendant stipulate to forego a hearing before a prelitigation panel. *Id.* § 78B-3-418(2)–(3); *see also id*. §§ 78B-3-416(3)(c)–(e), -423(2)–(3).

¶10    One of the purposes of this prelitigation process is to "expedite early evaluation and settlement of claims." *Id.* § 78B-3-402(3). To this end, the Malpractice Act contains a confidentiality provision, which encourages the parties to fully participate in the prelitigation hearing and evaluate the strengths and weaknesses of the claim without fear of giving the opposing party an advantage in potential future litigation. This confidentiality provision states that the proceedings before the prelitigation panel "are confidential, privileged, and immune from civil process."[1] *Id.* § 78B-3-416(1)(d).

---

[1] Notably, the Malpractice Act provides that the prelitigation panel proceedings are both confidential and privileged. The directive that the proceedings remain confidential indicates that information about the proceedings is "meant to be kept secret," and may not be shared with individuals who did not participate in the prelitigation hearing. BLACK'S LAW DICTIONARY 339 (9th ed. 2009) (defining "confidential"); *see also id.* (defining "confidentiality" as "the state of having the dissemination of certain information restricted"). The

The Malpractice Act, however, provides no guidance on what the consequences of breaching this confidentiality provision should be.

¶11    In this case, Mrs. Coroles does not dispute that her counsel violated the confidentiality provision of the Malpractice Act when he revealed the alleged opinions of the prelitigation panel to the prospective expert witnesses. Instead, she contends that the district court erred by concluding that exposing an expert to confidential information "creates an irrebuttable presumption that the expert is tainted and must be excluded." In other words, Mrs. Coroles asserts that the court should not have excluded the experts without first determining whether the confidential information would affect their testimony at trial. We first determine the appropriate standard of review for this issue. We then apply this standard of review to evaluate whether the district court erred.

*A. Standard of Review*

¶12    The defendants argue that the district court's exclusion of the expert witnesses is similar to a discovery sanction under rule 37 of the Utah Rules of Civil Procedure. The defendants further contend that, like a discovery sanction, the district court's ruling should be reviewed for an abuse of discretion. *See Goggin v. Goggin*, 2013 UT 16, ¶ 33, 299 P.3d 1079 (discovery sanctions are reviewed for abuse of discretion). There is an important distinction, however, between a discovery sanction and the district court's order excluding the expert witnesses in this case. Rule 37(e) authorizes a district court to sanction a party for disobeying a discovery order and describes an array of sanctions to choose from. In light of this explicit grant of discretion, it is entirely appropriate to review a district court's discovery-sanction ruling for an abuse of that discretion. In contrast, there is no statute, rule, or caselaw authorizing the district court to sanction parties for a violation of the confidentiality provision of the

---

independent mandate that the proceedings are also privileged has a completely different effect. A privilege grants the holder of the privilege the legal right to refuse to disclose certain information. *Cf.* UTAH R. EVID. 504(b) (attorney-client privilege). Thus, while the confidentiality mandate restricts the rights of the parties to reveal information concerning the prelitigation proceedings, the privilege mandate grants the parties the option to refuse to disclose the information. Because this case deals with a violation of the confidentiality mandate of Utah Code section 78B-3-416(1)(d), we do not interpret or address the privilege mandate.

Malpractice Act. Rule 37(e) does not apply because no court order was disobeyed, and the Malpractice Act does not explicitly authorize the district court to take any particular action in response to a violation of the confidentiality provision. The district court, therefore, was in the difficult position of choosing a course of action with no law to guide it.

¶13    Thus, Mrs. Coroles's argument that the district court erred when it excluded her expert witnesses without examining them raises the fundamental legal question of what a court may do when confidential information about the proceedings before a prelitigation panel is shared with a testifying expert. The district court concluded as a matter of law that the exposure of an expert to any information protected by Utah Code section 78B-3-416(1)(d) requires automatic exclusion. Because this court has "the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction," we examine this legal conclusion de novo. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

*B. Exclusion of Expert Witnesses Exposed to Confidential Information*

¶14    As noted above, one of the purposes of the confidentiality provision of the Malpractice Act is to prevent the prelitigation-panel proceedings from affecting the actual litigation of a claim. *Supra* ¶ 10. In this case, the district court's apparent rationale for excluding the expert witnesses exposed to confidential information was to prevent the confidential information from tainting the evidence presented to the jury. The question presented in this appeal, therefore, is whether a district court may achieve this objective by ordering the per se exclusion of the experts without first determining whether their opinions are in fact based upon the confidential information.

¶15    We have not discovered Utah caselaw addressing this question, but cases examining analogous federal statutes are helpful and persuasive. Statutes regulating marine casualty reports and federal highway safety reports, for example, contain provisions forbidding the use of those reports in civil litigation. Thus, "no part of a report of a marine casualty investigation conducted under [the federal reporting statute] . . . shall be admissible as evidence or subject to discovery in any civil or administrative proceedings." 46 U.S.C. § 6308(a) (2015). Similarly, certain highway safety reports "shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages." 23 U.S.C. § 409 (2015). The objective of

these statutes is the same as the objective of the confidentiality provision at issue in this case: to prevent certain information from affecting the outcome of civil litigation. *See Robertson v. Union Pac. R.R. Co.*, 954 F.2d 1433, 1435 (8th Cir. 1992) ("[T]he underlying intent of [23 U.S.C. § 409] is to facilitate candor in administrative evaluations of highway safety hazards, and to prohibit federally required record-keeping from being used as a tool . . . in private litigation." (third alteration in original) (citations omitted) (internal quotation marks omitted)).

¶16 When interpreting these federal statutes, courts have held that experts exposed to the inadmissible information should not automatically be excluded. Instead, experts have been allowed to testify so long as they are able to form an opinion without relying upon the inadmissible information. When interpreting the marine casualty reporting statute (46 U.S.C. § 6308), courts have rejected attempts to exclude an expert who has reviewed inadmissible casualty reports. *United States v. Egan Marine Corp.*, 808 F. Supp. 2d 1065, 1074 (N.D. Ill. 2011) ("[A]n expert report that simply cites or references an [inadmissible casualty report] is not necessarily inadmissible, nor is the expert automatically barred from testifying."); *Am. S.S. Co. v. Hallett Dock Co.*, No. 09-2628 (MJD/LIB), 2013 WL 308907, at *6 (D. Minn. Jan. 25, 2013) ("[T]he portion of any expert opinion that relies on or is substantially based on the [inadmissible casualty report] is inadmissible, although the rest of the expert opinion is still admissible."); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. Civ.A.03-1230, 2004 WL 859199, at *1 (E.D. La. Apr. 20, 2004) (striking portions of an expert report that rely upon an inadmissible casualty report but declining to strike conclusions that do not rely on the inadmissible casualty report). At least one court interpreting the highway safety report statute (23 U.S.C. § 409) has similarly refused to categorically exclude an expert who reviewed an inadmissible report. *Lanasa v. Harrison*, 828 So. 2d 602, 605 (La. Ct. App. 2002) (holding that the trial court did not err by relying upon the conclusions of an expert witness who reviewed an inadmissible highway safety report because the expert based his opinions upon his independent assessment of the evidence); *see also Robertson*, 954 F.2d at 1435 (rejecting an argument that an expert should have been allowed to rely upon an inadmissible highway department materials and concluding "that the district court did not abuse its discretion by instructing appellants' expert witness, pursuant to 23 U.S.C. § 409, to disregard

information compiled or utilized by the [highway depatment] in formulating his opinion").

¶17    Moreover, requiring experts to exclude consideration of confidential information in forming an opinion would not be impossible, as the defendants in this case suggest. In an analogous case, *Allstate Insurance Co. v. Electrolux Home Products, Inc.*, a plaintiff's expert revealed that he had reviewed information that was subject to a confidentiality agreement. 840 F. Supp. 2d 1072, 1076 (N.D. Ill. 2012). Because the information was confidential, the expert did not disclose it to the defendant as required by Federal Rule of Civil Procedure 26(a)(2). *Id.* The defendant argued, therefore, that the federal district court should prohibit the expert from testifying at trial because the defendant could not properly explore the foundation of the expert's opinions. *Id.* The district court disagreed, ruling that the "drastic measure" of expert disqualification was inappropriate. *Id.* at 1083–84 (internal quotation marks omitted). Instead, the court ordered the expert to "compartmentalize" the confidential information and "exclude that information from the basis for his opinions." *Id.* at 1084. The court noted that this task was similar to that performed by jurors when instructed to disregard stricken testimony or by a judge when evidence is excluded from a bench trial. *Id.* Thus, "[t]o ask an expert to 'forget' or exclude [confidential information] . . . is not an impossibility; rather, it is a task performed by various individuals in the court system each day." *Id.*

¶18    A similar remedy may be appropriate here. The district court erred, however, by ordering the per se exclusion of the expert witnesses without first discovering (1) whether the experts relied upon the confidential information revealed in the introductory letter sent by Mrs. Coroles's attorney or (2) whether the experts are able to render an opinion without considering the confidential information.[2] In conducting such an investigation, the district court "has

---

[2] It seems unlikely that, in lieu of conducting an independent assessment of the medical evidence, a reputable medical expert would rely on a lawyer's incomplete recitation of some of the opinions expressed by an anonymous panel composed of a lawyer, a health care provider, and a lay person tasked with performing an administrative screening process. Indeed, it is doubtful whether any substantial reliance upon the opinions expressed by the panel would support admissible expert testimony. *See* UTAH R. EVID. 702.

numerous tools it must employ to prevent unwarranted disclosure of the confidential information, including the use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings." *Spratley v. State Farm Mut. Auto. Ins. Co.,* 2003 UT 39, ¶ 22, 78 P.3d 603 (internal quotation marks omitted). If a district court determines that an expert can express an opinion without relying on the confidential information, the expert should not be stricken. Instead, any reference to the confidential information should be stricken from the expert's report and the court should instruct the expert to disregard the confidential information. *See Allstate,* 840 F. Supp. 2d at 1081, 1084.

## II. EXCLUSION OF THE SUPPLEMENTAL EXPERT WITNESSES AS A SANCTION FOR THEIR UNTIMELY DESIGNATION UNDER THE SCHEDULING ORDER

¶19  Rule 16 of the Utah Rules of Civil Procedure gives the district court "broad authority to manage a case." *Boice ex rel. Boice v. Marble,* 1999 UT 71, ¶ 8, 982 P.2d 565. Under this rule, the court may "establish[] the time to complete discovery" through a scheduling order. UTAH R. CIV. P. 16(a)(9). If a party fails to obey a scheduling order establishing a discovery deadline, the district court "may take any action authorized by Rule 37(e)" of the Utah Rules of Civil Procedure. UTAH R. CIV. P. 16(d). The permissible sanctions for providing untimely discovery include "prohibit[ing] the disobedient party . . . from introducing designated matters into evidence" (e.g., exclusion of the evidence disclosed after the deadline), or "order[ing] the party or the attorney to pay the reasonable expenses, including attorney fees, caused by the failure." UTAH R. CIV. P. 37(e)(2)(B), (E); *see also Boice,* 1999 UT 71, ¶ 8 ("If a party fails to obey a date set under rule 16, the court may sanction the offending party by excluding evidence the party intends to present."); *id.* ¶ 11 (noting that a court may also order monetary sanctions).[3]

¶20  Thus, this court has held that rule 16(d) is the source of the district court's authority to sanction a party for producing untimely discovery under a scheduling order *Boice,* 1999 UT 71, ¶ 8 & n.3; *Arnold v. Curtis,* 846 P.2d 1307, 1309–10 (Utah 1993). We review a court's decision whether or not to sanction a party under rule 16(d),

---

[3] On May 1, 2015, rule 37 will be renumbered and the wording of some of the permissible sanctions will change. We cite the version of rule 37 in effect prior to May 1, 2015.

as well as the selection of an appropriate sanction, for abuse of discretion. *Boice*, 1999 UT 71, ¶¶ 7, 11.

¶21    Here, Mrs. Coroles violated the district court's scheduling order when she designated the supplemental expert witnesses after the deadline. As a sanction for the untimely designations, the court excluded the experts. But the court did not do so pursuant to rule 16(d), nor did it cite this court's precedent when it struck the supplemental experts. Instead, the district court relied upon a line of cases from the court of appeals and excluded the experts under rule 37(h) of the Utah Rules of Civil Procedure.[4] *See Spafford v. Granite Credit Union*, 2011 UT App 401, ¶ 16, 266 P.3d 866 (reviewing the exclusion of an expert witness designated after the scheduling order deadline under the standard established in current rule 37(h)); *Brussow v. Webster*, 2011 UT App 193, ¶¶ 3–4, 258 P.3d 615 (same); *Lippman v. Coldwell Banker Residential Brokerage Co.*, 2010 UT App 89, at *2 (same); *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 23, 222 P.3d 775 (same).

¶22    The difference between the standard for sanctioning a party under rule 16(d) and the standard for sanctioning a party under rule 37(h) is meaningful. Rule 16(d) provides that a court "may" impose a sanction described in rule 37(e) for a failure to abide by the scheduling order. Rule 37(h), on the other hand, states:

> If a party fails to disclose a witness, document or other material, . . . that party *shall not be permitted to use the witness*, document or other material at any hearing *unless the failure to disclose is harmless or the party shows good cause for the failure to disclose*. In addition to or in lieu of this sanction, the court on motion may take any action authorized by paragraph (e)(2).

(Emphasis added). While rule 16(d) leaves the decision of whether to sanction a party to the broad discretion of the district court, rule 37(h) imposes a structure whereby the court "shall" exclude an

---

[4] In its order excluding the supplemental experts, the district court actually cites rule 37(f), which is the former location of the current rule 37(h). *See* UTAH R. CIV. P. 37(f) (2010). It is clear from the court of appeals cases the district court also cites, as well as a discussion of the same issue in an order denying a motion for reconsideration, that the court intended to cite the current rule 37(h). We note that on May 1, 2015, rule 37(h) will be deleted.

undisclosed witness "unless" the party shows either harmlessness or good cause. In other words, rule 37(h) shifts the burden to the nondisclosing party to show why the undisclosed evidence should not be excluded.

¶23    The preliminary issue before us, therefore, is whether the district court employed the correct standard when it applied rule 37(h) rather than rule 16(d) to the question of whether Mrs. Coroles or her counsel should be sanctioned for violating the scheduling order. We conclude that there is no reason to deviate from our prior caselaw endorsing the application of rule 16(d) to these types of questions. Rule 16 authorizes a district court to set discovery deadlines, while subsection (d) of this rule specifically permits the court to sanction a violation of these deadlines. Rule 37(h), on the other hand, governs when a party "fails to disclose a witness, document or other material." Thus, rule 16(d) is applied when evidence is produced late under the scheduling order, while rule 37(h) is applied when evidence is not disclosed at all.[5] We therefore repudiate *Spafford*, *Brussow*, *Lippman*, and *Posner* to the extent that those cases suggest that rule 37(h) should be applied where discovery is produced after a scheduling order deadline. *See Spafford*, 2011 UT App 401, ¶ 16; *Brussow*, 2011 UT App 193, ¶¶ 3–4; *Lippman*, 2010 UT App 89, at *2; *Posner*, 2009 UT App 347, ¶ 23.

¶24    Because those cases led the district court to apply rule 37(h), the court used the wrong standard when it sanctioned Mrs. Coroles by excluding her supplemental expert witnesses. Although courts have discretion to sanction parties for violating a scheduling order, an exercise of discretion guided by an erroneous legal conclusion is reversible. *See State v. Barrett*, 2005 UT 88, ¶¶ 15–17, 127 P.3d 682. We therefore reverse the district court's order excluding the supplemental experts.

¶25    Because this issue may arise again on remand, we also address whether the district court has discretion to award the extreme sanction of witness exclusion on the facts of this case. *See State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully

---

[5] Federal caselaw has similarly concluded that the rule authorizing courts to sanction a party for the untimely designation of an expert witness under the scheduling order is the analogous rule 16(f) of the Federal Rules of Civil Procedure. *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990); *see also* 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 16.92[6][a] (3d ed. 2014).

briefed on appeal and are likely to be presented on remand should be addressed by this court.").

¶26    We addressed a somewhat analogous factual scenario in *Boice*, 1999 UT 71. In that case, a plaintiff in a medical malpractice case timely designated his expert witnesses. *Id.* ¶¶ 4, 7. But about six-and-a-half months after the deadline to designate expert witnesses, and about two months before trial, one of the plaintiff's experts informed him that he no longer intended to testify. *Id.* Eight days later, the plaintiff moved to designate a substitute expert, but the district court denied the motion because it was not timely under the scheduling order. *Id.* ¶ 7. The court subsequently granted summary judgment in favor of the defendants because the plaintiff could no longer produce a necessary expert witness. *Id.* ¶ 5.

¶27    On appeal, we held that the district court had abused its discretion. We noted that the plaintiff had obeyed the scheduling order and that he was required to designate a replacement expert only because of circumstances beyond his control. *Id.* ¶ 11. Moreover, we observed that the plaintiff moved to substitute witnesses before the discovery cutoff date, and two months before the trial date. *Id.* Finally, we noted that the district court could have postponed the trial date or ordered the plaintiff to pay any additional costs associated with the substitution of the expert witness in order to obviate any prejudice to the defendants. *Id.*

¶28    Similar to the plaintiff in *Boice*, Mrs. Coroles also designated her initial expert witnesses by the deadline established in the scheduling order. She likewise promptly designated replacement experts two weeks after the defendants moved to exclude her initial experts. In some respects, Mrs. Coroles was even less deserving of a witness exclusion sanction than the *Boice* plaintiff. Mrs. Coroles designated her replacement experts three months before the deadline to complete expert depositions, and a trial date had not even been set. Thus, the only prejudice identified by the district court for allowing the replacement experts to testify would be the need for a new scheduling order and a potential delay in the eventual trial date.

¶29    It is true that Mrs. Coroles's situation is somewhat less sympathetic than that of the plaintiff in *Boice* because the potential need for replacement experts in this case was caused by her lawyer's violation of a confidentiality statute. But there is every indication that counsel's decision to reveal the confidential information was

based upon his misreading of the law rather than any intentional misconduct. And, "[a]s a general rule, when the fault lies solely with the attorneys, the impact of the sanction should be lodged with the attorneys." 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 16.92[4] (3d ed. 2014) (describing caselaw interpreting rule 16 of the Federal Rules of Civil Procedure). Moreover, where the exclusion of an expert is tantamount to the dismissal of the lawsuit, as is the case here, the district court should exercise restraint in choosing this grave step rather than a lesser sanction. *Id.* § 16.92[5][c][i]; *see also Welsh v. Hosp. Corp. of Utah*, 2010 UT App 171, ¶ 10, 235 P.3d 791 ("Excluding a witness from testifying is . . . extreme in nature and . . . should be employed only with caution and restraint." (alterations in original) (internal quotation marks omitted)). Thus, under the facts of this case, the exclusion of Mrs. Coroles's supplemental witnesses as a sanction for violating the scheduling order would be an abuse of discretion.[6]

## CONCLUSION

¶30    We reverse both the district court's order excluding Mrs. Coroles's original expert witnesses and the resulting summary judgment. On remand, the district court may exclude these experts only if it finds that they relied upon the confidential information in forming their opinions and that the experts cannot express an opinion at trial without relying upon the confidential information.

¶31    If the district court permits the original experts to testify, the court's exclusion of the supplemental experts will become a moot issue. But if the district court excludes the original experts, we also

---

[6] In the district court's order excluding the supplemental experts, the court noted that Mrs. Coroles never sought leave to serve the late expert witness designations. It appears that the district court took this into account when sanctioning Mrs. Coroles. We are aware of no rule, however, requiring a party to seek permission or forgiveness before serving a late designation. Nor does the scheduling order contain any such requirement. Because rule 16(d) only authorizes a court to sanction a party for a failure to obey a scheduling order, the fact that Mrs. Coroles did not seek permission to serve the untimely witness designations is not an independent reason to sanction her. District courts could, of course, include in the scheduling order a requirement that a party seek permission before serving a late designation. In that hypothetical scenario, a court could choose to sanction a party for violating that requirement.

reverse the district court's order excluding the supplemental expert witnesses. If it becomes necessary for the court to address the issue of sanctions for the untimely designation of the replacement experts, the court may choose a sanction short of exclusion of the experts if it determines a sanction is appropriate under rule 16(d).

————————