2016 UT App 62

# THE UTAH COURT OF APPEALS

SLEEPY HOLDINGS LLC,
Appellant,
*v.*
MOUNTAIN WEST TITLE AND TIM HERRERA,
Appellees.

Opinion
No. 20140937-CA
Filed March 31, 2016

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
The Honorable Samuel D. McVey
No. 100403357

Jeffrey J. Goulder and Paul A. Christensen, Attorneys
for Appellant

Korey D. Rasmussen and Lindsay K. German,
Attorneys for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE STEPHEN L. ROTH and JUSTICE JOHN A. PEARCE concurred.[1]

VOROS, Judge:

¶1      Sleepy Holdings LLC challenges the district court's ruling excluding untimely disclosed evidence and granting summary judgment. We affirm.

---

1. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

BACKGROUND[2]

¶2    In 2007 and 2008, The Lakes at Sleepy Ridge, Inc. and Cambridge Partners, LLC (collectively, the Lakes) received two construction loans. Each loan required the Lakes to subordinate a prior trust deed in favor of the new loans. Mountain West Title, the Lakes' escrow agent, recorded trust deeds on the two construction loans, but failed to record the subordinations. In the ensuing dispute over the subordinations, the Lakes defaulted on both construction loans. With the loans in default, the Lakes could not provide marketable title to potential buyers. One such buyer had contracted with the Lakes to purchase twenty lots for a total of $2 million. When the Lakes could not deliver clear title, the buyer canceled the sale.

¶3    The Lakes assigned its interest in the project to Sleepy Holdings. In October 2010, Sleepy Holdings sued Mountain West Title and its owner, Tim Herrera (collectively, Mountain West), for breach of contract, breach of fiduciary duty, and negligence. The complaint described the failed $2 million sale under the heading "General Allegations." Sleepy Holdings filed initial disclosures as required by rule 26(a) of the Utah Rules of Civil Procedure and the case management order. The initial disclosures stated that "damages are described in the complaint" and that "additional work will be done in assessing and computing such damages." The initial disclosures did not otherwise describe the failed $2 million sale.

¶4    Sleepy Holdings amended its complaint twice in 2011. The district court then entered a new scheduling order, which listed June 30, 2012 as the discovery cutoff date. A month after

---

2. When reviewing a district court's rulings on a summary judgment motion, we recite the facts and fair inferences in the light most favorable to the nonmoving party. *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439.

the discovery cutoff date, Sleepy Holdings' attorneys determined that they would need to withdraw from the case. Five months later, Sleepy Holdings' new counsel entered an appearance. In August 2013, more than a year after the discovery cutoff date, Sleepy Holdings filed its first supplemental disclosure. It presented damages theories, including what it called the lost $2 million sale.

¶5    Mountain West moved to strike Sleepy Holdings' first supplemental disclosure and "to exclude damages not calculated by the end of the fact discovery cutoff." Mountain West argued that Sleepy Holdings had filed its supplemental disclosure more than a year after the June 30, 2012 discovery cutoff date. The district court struck Sleepy Holdings' first supplemental disclosure. Citing *Bodell Construction Co. v. Robbins*, 2009 UT 52, 215 P.3d 933, the district court reasoned, "The Utah Supreme Court has determined supplemental disclosures regarding damages filed a mere three weeks after the fact discovery deadline are prejudicial. This Court can hardly find that supplemental disclosures filed over a year or more than fifty-two weeks [after the deadline] are timely." And it found that "no good cause exists to permit the untimely supplemental disclosures."

¶6    Shortly after Sleepy Holdings filed its first supplemental disclosure, Mountain West moved for summary judgment on the ground that Sleepy Holdings had failed to produce evidence of the assignment from the Lakes to Sleepy Holdings. In response to this motion, Sleepy Holdings filed a second supplemental disclosure naming witnesses able to testify about the assignment. Mountain West moved to strike Sleepy Holdings' second supplemental disclosure as untimely. The court struck the disclosure.

¶7    In June 2014, the district court judge recused himself and a new judge stepped in. Sleepy Holdings moved the court to reconsider and reverse the rulings striking both the first and second supplemental disclosures. Sleepy Holdings argued that

"these Rulings prevent [Sleepy Holdings] from presenting any evidence of damages, and from offering affidavit and trial testimony from three witnesses." The court denied the motion, stating that "[a]ll disclosures should have been made when due." The court concluded that the original judge "properly exercised his discretion and followed the law in a thorough ruling on this matter. There is no need to second guess him when he got it right."

¶8    After the district court denied the motion for reconsideration, Mountain West moved for summary judgment, arguing that the "case should be dismissed due to the absence of damages." The court granted summary judgment. Sleepy Holdings timely appeals.

ISSUES AND STANDARD OF REVIEW

¶9    Sleepy Holdings first contends that the district court abused its discretion when it imposed the sanction of "excluding evidence of damages and then entering summary judgment against Sleepy Holdings." We review the district court's exclusion of initial disclosures for an abuse of discretion. *See Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 13, 329 P.3d 815.

> In applying the abuse of discretion standard to the district court's imposition of a particular sanction, we give the district court a great deal of latitude in determining the most fair and efficient manner to conduct court business because the district court judge is in the best position to evaluate the status of his [or her] cases, as well as the attitudes, motives, and credibility of the parties.

*Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 (alteration in original) (citation and internal quotation marks omitted).

¶10    Sleepy Holdings also contends that the court abused its discretion by barring a witness from testifying about the assignment from the Lakes to Sleepy Holdings. This witness was arguably necessary to establish that Sleepy Holdings had standing to sue. However, our resolution of Sleepy Holdings' first claim on appeal moots this second claim.

ANALYSIS

¶11    Sleepy Holdings challenges the district court's sanctions order excluding evidence of lost sale damages. Sleepy Holdings contends that its complaint constituted a sufficient disclosure of its damages computation and therefore that its disclosure of damages was timely. But even if it was not, Sleepy Holdings contends, the district court abused its discretion by imposing the sanction of barring Sleepy Holdings from presenting any evidence of its damages.

A.    Sleepy Holdings did not timely disclose its damages.

¶12    Rule 26 of the Utah Rules of Civil Procedure requires litigants to make initial disclosures of certain fact witnesses, documents, and other information. *See* Utah R. Civ. P. 26(a)(1)(C) (2010).[3] And rule 26(e)(1) requires a party "to supplement at appropriate intervals [initial] disclosures if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has

---

3. Rules 26 and 37 of the Utah Rules of Civil Procedure were amended in 2011; however, these amendments apply only to cases filed on or after November 1, 2011, and are therefore not applicable to this case. *See* Utah R. Civ. P. 1 advisory committee's note to 2011 amendment; *see also Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 13 n.2, 329 P.3d 815. Accordingly, we cite to the 2010 versions of these rules throughout this opinion.

not otherwise been made known to the other parties during the discovery process or in writing." *Id.* R. 26(e)(1). Finally, the rule provides that "a party shall, without awaiting a discovery request, provide to other parties . . . a computation of any category of damages claimed by the disclosing party." *Id.* R. 26(a)(1)(C).

¶13    "A plaintiff is required to prove both the fact of damages and the amount of damages." *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 16, 248 P.3d 1025. "To establish the fact of damages, '[t]he evidence . . . must give rise to a reasonable probability that the plaintiff suffered damage.'" *Id.* (alteration and omission in original) (quoting *Atkin Wright & Miller v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985)). "While the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *TruGreen Cos., LLC, v. Mower Bros., Inc.*, 2008 UT 81, ¶ 15, 199 P.3d 929 (citation and internal quotation marks omitted).

¶14    Even if a plaintiff cannot complete its computation of damages before future events take place, "the fact of damages . . . and the method for calculating the amount of damages" must be apparent in initial disclosures. *Stevens-Henager*, 2011 UT App 37, ¶ 22; *see also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 36, 215 P.3d 933. If "factual contentions about the amount of damages . . . require further investigation or discovery," the party must "undertake that investigation as early in the litigation process as is practicable." *Stevens-Henager*, 2011 UT App 37, ¶ 24. And investigation and discovery must be completed according to the schedule set by the district court. *See id.*; *see also Bodell*, 2009 UT 52, ¶¶ 36–37.

¶15    Here, Sleepy Holdings' initial disclosures stated that "damages are described in the complaint." Sleepy Holdings' complaint alleged that "the Lakes entered into a contract . . .

providing for the sale of twenty (20) lots for the purchase price of $2,000,000. The circumstances created by defendants' failure to obtain and record the subordination documents prevented said sale from moving forward causing further damage to plaintiffs." Sleepy Holdings maintains that this statement constitutes an adequate computation of damages under rule 26. Sleepy Holdings argues that an "arithmetic computation" is unnecessary because "$2 million minus 0 equals $2 million."

¶16   This argument assumes that the contract price constitutes the measure of damages for the loss of a bargain. But the contract price represents only one element of the damage calculation: "Loss of bargain damages are calculated by taking the difference between the contract price of the property and the value of the property at forfeiture." *Glezos v. Frontier Invs.*, 896 P.2d 1230, 1235 (Utah Ct. App. 1995) (emphasis omitted). "A property's sale price is an indication, though inconclusive, of its fair market value. When there is no decrease in value between the contract price and the fair market value at forfeiture, the seller may not recover loss of bargain damages." *Id.* (citation omitted). Subject to the qualifications mentioned in the cases quoted above, this is the sort of "computation of . . . damages" referred to in rule 26 for a case of this type. *See, e.g.*, *Bodell*, 2009 UT 52, ¶ 36 (discussing computation where plaintiff "disclosed that its damages 'constitute the funds advanced, together with interest at the legal rate, less the payment received'").

¶17   Moreover, while Sleepy Holdings' complaint describes the $2 million sale, it does not identify the failed sale as damages or offer a computation or method of calculating the damages as required by law. We therefore agree with the district court that Sleepy Holdings' complaint and initial disclosures failed to satisfy the requirements of rule 26.

¶18   Finally, Sleepy Holdings did not supplement its disclosures within the discovery period. Its initial disclosures stated, "It is anticipated that as discovery and litigation proceed, that additional work will be done in assessing and computing

such damages and that the ultimate determination and computation thereof will require expert testimony. Additional appropriate supplementation of this part of these disclosures will be made." As explained above, if "factual contentions about the amount of damages . . . require further investigation or discovery," the party must "undertake that investigation as early in the litigation process as is practicable." *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 24, 248 P.3d 1025. And that investigation must be completed according to the schedule set by the district court. *See id.*; *see also Bodell*, 2009 UT 52, ¶¶ 36–37. But Sleepy Holdings did not supplement its initial disclosures until August 2013, more than a year after the close of discovery. Those supplemental disclosures, like the complaint, include no computation of damages as required by law. But even if they did, we see no abuse of discretion in the district court's ruling those supplemental disclosures untimely. They indisputably were.

B.     The sanctions provision of rule 26, not rule 16, applies.

¶19     Sleepy Holdings contends that, even if its supplemental disclosures were untimely, "the sanctions imposed were an abuse of discretion." The district court ruled that Sleepy Holdings violated rule 26(a)(1)(C) and imposed the mandatory sanctions under rule 37(f). Sleepy Holdings argues that the district court should instead have applied the discretionary sanctions found in rule 16(d).

¶20     Rule 16 governs pretrial conferences, scheduling, and management conferences. *See* Utah R. Civ. P. 16. Rule 16(d) "is the source of the district court's authority to sanction a party for producing untimely discovery under a scheduling order." *Coroles v. State,* 2015 UT 48, ¶ 20, 349 P.3d 739. The sanctions for rule 16 violations appear in rule 37(b)(2). If a party fails to obey an order entered under rule 16(b) or to obey a discovery order, "unless the court finds that the failure was substantially justified," the court "may" impose a sanction, including "prohibit[ing] the disobedient party from supporting or

opposing designated claims or defenses or from introducing designated matters in evidence." Utah R. Civ. P. 37(b)(2) (2010); *see also Coroles*, 2015 UT 48, ¶ 19. The key word here is *may*: "rule 16(d) leaves the decision of whether to sanction a party to the broad discretion of the district court." *Coroles*, 2015 UT 48, ¶ 22.

¶21 The district court did not rely on rule 16, but on rule 26, which governs initial disclosures and discovery. Rules 26(a) and 26(e) require the parties to make initial disclosures and to supplement those disclosures as necessary. The sanctions for rule 26(a) and 26(e) violations appear in rule 37(f). When a party fails to timely make or supplement initial disclosures, rule 37(f) mandates that the district court exclude the untimely disclosure unless the failure to disclose is harmless or the non-disclosing party shows good cause for its non-disclosure:

> If a party fails to disclose a witness, document, or other material as required by Rule 26(a) or Rule 26(e)(1), . . . that party shall not be permitted to use the witness, document or other material at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose.

Utah R. Civ. P. 37(f) (2010). "The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that the violation of rule 26(a) was either justified or harmless." *Dahl v. Harrison*, 2011 UT App 389, ¶ 22, 265 P.3d 139; *see also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 (citing Utah R. Civ. P. 37(f)).

¶22 We agree with the district court that rule 26 applies here. As explained above, the court sanctioned Sleepy Holdings for failure to make and supplement the initial disclosures required by rules 26(a) and 26(e). The district court's ruling repeatedly cites rule 26; it never mentions rule 16.

¶23    Sleepy Holdings urges us to follow *Coroles.* But *Coroles* did not interpret—or even mention—rule 26. The plaintiff in *Coroles* "violated the district court's scheduling order." *Coroles*, 2015 UT 48, ¶ 21. "Rule 16"—not rule 26—"authorizes a district court to set discovery deadlines." *Id.* ¶ 23. *Coroles* did not purport to address what sanctions apply when a party fails to timely make or timely supplement initial disclosures under rules 26(a) or 26(e); in fact, it never mentions initial disclosures or rule 26. Thus, *Coroles* does not control here.

C.    The rule 26 violation was not harmless.

¶24    As explained above, the district court did not abuse its discretion in ruling that Sleepy Holdings failed to disclose its damages computation. Further, the district court properly ruled that this rule 26 violation implicated the sanctions found in rule 37(f). "Accordingly, the proper inquiry is whether the district court abused its discretion in determining that the [plaintiff's] failure to disclose was not harmless and that good cause did not excuse its failure." *Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 14, 329 P.3d 815.

¶25    On appeal, Sleepy Holdings does not contend that the district court erred in failing to find that good cause excused its failure to disclose. But Sleepy Holdings does contend that its failure to disclose did not harm Mountain West, or at least that Mountain West could have mitigated any harm. Specifically, Sleepy Holdings points to the fact that Mountain West, after filing its motion for sanctions, struck the scheduled deposition of the witness Sleepy Holdings had designated pursuant to rule 30(b)(6) of the Utah Rules of Civil Procedure.

¶26    Pursuant to rule 37(f), the district court ruled that Sleepy Holdings had failed to disclose its damages computation as required by rule 26, that Sleeping Holdings had not shown good cause for the failure to disclose, and that the violation was not harmless. Accordingly, the court concluded that Sleepy

Holdings would not be permitted to use any damages computation at trial. In so ruling, the court relied on the Utah Supreme Court's decision in *Bodell Construction Co. v. Robbins*, 2009 UT 52, 215 P.3d 933. In *Bodell*, the supreme court held that the district court did not abuse its discretion in finding that the plaintiff's new damage theories disclosed three weeks after the end of fact discovery were untimely. The court also held that permitting the plaintiff to prove damages at trial would prejudice the defendant, who could no longer conduct discovery to rebut those damage theories. *See id.* ¶ 37. The district court here stated that if the supreme court "has determined supplemental disclosures regarding damages filed a mere three weeks after the fact discovery deadline are prejudicial[, t]his Court can hardly find that supplemental disclosures filed over a year or more than fifty-two weeks are timely."

¶27　Sleepy Holdings has not shown an abuse of discretion on the part of the district court. First, Sleepy Holdings' argument assumes that the opportunity to depose a knowledgeable witness after the discovery cutoff mitigates any harm caused by a plaintiff's failure to disclose its damages computation early in the litigation. We do not believe this proposition is self-evident. True, Mountain West might, as Sleepy Holdings suggests, have simply proceeded with the deposition. But Sleepy Holdings has not proffered what testimony would have been given. Consequently, we cannot know how much detail Sleepy Holdings would have supplied for its damages computation— after all, Sleepy Holdings maintains on appeal that the $2 million figure alleged in its complaint constitutes an adequate computation of damages. Furthermore, had the deposition suggested additional avenues of discovery, Mountain West would be at a disadvantage in exploring them, as the discovery cutoff had by that time passed. And, as in *Bodell*, "[t]hough the district court could have reopened fact discovery to allow [further discovery on the damages issue], the court was not obligated to do so." *See Bodell*, 2009 UT 52, ¶ 37. This is especially true, as the district court here noted, considering that the

discovery cutoff had passed a year earlier, not a mere three weeks as in *Bodell*.

¶28 "Trial courts have broad discretion to manage [their] docket[s] and set firm deadlines for motion practice." *State v. Gonzalez*, 2015 UT 10, ¶ 48, 345 P.3d 1168 (alterations in original) (citation and internal quotation marks omitted). The district court's sanctions ruling, while perhaps not the only permissible one under the circumstances, nevertheless fell well within the limits of its discretion. In short, the court did not act unreasonably in ruling that a deposition of a rule 30(b)(6) witness giving unproffered testimony a year after the passing of the discovery cutoff did not necessarily mitigate the harm of Sleepy Holdings' failure to make or supplement an initial disclosure of its damages computation. We therefore affirm the district court's sanctions order.

¶29 Our affirmance of the district court's sanctions order prevents Sleepy Holdings from proceeding to trial. Accordingly, our ruling renders the second issue on appeal, concerning the admissibility of certain potential trial testimony, moot.

## CONCLUSION

¶30 The judgment of the district court is affirmed.