**2016 UT App 121**

## THE UTAH COURT OF APPEALS

THE CLIFFORD P.D. REDEKOP FAMILY LLC
AND H. TIMOTHY MCCARDELL,
Appellants,
*v.*
UTAH COUNTY REAL ESTATE LLC, DONALD L. BLACKWELDER,
AND TERRY A. POTTER,
Appellees.

Opinion
No. 20150097-CA
Filed June 3, 2016

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 110401668

Dwight G. Beckstrand, Attorney for Appellants

Russell C. Fericks and Sean C. Miller, Attorneys
for Appellees

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGES GREGORY K. ORME and MICHELE M.
CHRISTIANSEN concurred.[1]

GREENWOOD, Senior Judge:

¶1     Plaintiffs The Clifford P.D. Redekop Family LLC and H.
Timothy McCardell (collectively, Redekop) appeal the district
court's order granting summary judgment to Defendants Utah
County Real Estate LLC, Donald L. Blackwelder, and Terry A.
Potter (collectively, Prudential). We affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

BACKGROUND

¶2      In 2005, Redekop entered into a Limited Agency Consent Agreement with Prudential. Prudential represented both the buyer—Redekop—and the seller when Redekop purchased two commercial office condominiums in Utah County (the Premises). For several years, Redekop collected rent from its commercial tenants in the Premises without any problems. But in 2009, both of Redekop's tenants claimed Redekop had overstated the square footage of the Premises, stopped paying rent, and demanded a rebate of rent paid. One tenant abandoned the Premises and, apparently, the other eventually moved out. Redekop was unable to find replacement tenants, and the loss of rental income caused it to default on the loan used to finance purchase of the Premises. The lender foreclosed on the property.

¶3      In June 2011, Redekop sued Prudential seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, civil conspiracy, and negligent misrepresentation. Redekop claimed Prudential "knew that the square footage of the Premises . . . was inaccurate" but misrepresented the square footage in order to "ensure the successful sale of the Premises [to Redekop] at the highest possible price."

¶4      A September 2012 stipulated amended case management order (the 2012 Scheduling Order) designated the fact discovery deadline as January 31, 2013, and the deadline for Redekop's expert disclosures of February 28, 2013, extending both deadlines by six months from the original order. The cutoff date for filing dispositive motions was extended to July 31, 2013. In August 2013, after months of inactivity, the district court notified the parties that it would dismiss the case unless it heard from Redekop within twenty days "showing good cause why this [case] should not be dismissed." Twenty-one days later, Redekop filed a motion, explaining that the sudden death of "one of the Redekop parties['] children had caused the delay

and requesting that the district court schedule a trial date. Prudential filed a motion for summary judgment, arguing that Redekop had not designated an expert witness to address the professional and legal duty of a limited real estate agent. Redekop responded with a motion to strike the motion for summary judgment, in which it requested a modification of the 2012 Scheduling Order regarding designation of expert witnesses. The district court refused to consider Redekop's motion due to untimeliness but nevertheless denied Prudential's motion for summary judgment, stating that Prudential had not met its "burden of presenting evidence that no genuine issue of material fact exists in this case."

¶5 In its second stipulated amended case management order dated February 14, 2014 (the 2014 Scheduling Order)—seventeen months after the 2012 Scheduling Order and almost two years after the original case management order—the district court set an expert disclosure deadline of June 12, 2014, for Redekop; a rebuttal expert disclosure deadline of July 14, 2014, for Prudential; and an expert discovery completion deadline of September 30, 2014, for both parties. Expert witness disclosures and expert reports were to comply with rule 26(a)(3) of the Utah Rules of Civil Procedure.[2] The district court later advised the parties that the deadlines in the 2014 Scheduling Order "are firm and will not be extended."

¶6 Redekop timely designated its expert witnesses. The district court noted, however, that the report disclosed only the

---

2. Because this case was filed in June 2011 and because amendments to the Utah Rules of Civil Procedure effective November 1, 2011, made significant changes to the discovery rules, the district court applied the pre-amendment version of the discovery rules. *See* Utah R. Civ. P. 1 advisory committee notes. We, likewise, cite the pre-amendment version of the rules.

name Pontis Architectural Group as its expert and included only "floor plans of the commercial property in dispute" and "conclusory" square footage assessments, without explaining how those numbers were calculated. Prudential objected to the expert witness report, citing the report's insufficiency and lack of identification of any individual qualified to testify as an expert in the case. Prudential also attempted to communicate with Redekop to correct the report's deficiencies so that it could depose Clifford Redekop and the designated experts. When Redekop still did not supplement its expert disclosure, Prudential notified Redekop and the district court that it was cancelling the deposition of Redekop's expert scheduled to take place on the last day of expert witness discovery. After close of business on September 30, 2014—the deadline for expert discovery—Redekop provided a supplement to its expert witness designation and report. The supplement contained the names of three individuals associated with Pontis Architectural Group, who Redekop explained "may" testify, along with a brochure from Pontis Architectural Group detailing biographical information for each potential witness. Prudential, on the other hand, had timely designated its rebuttal expert witnesses by its July deadline.

¶7      On October 7, Prudential filed a second motion for summary judgment, arguing that the district court should exclude Redekop's expert witness due to its failure to comply with the 2014 Scheduling Order and that, in the absence of qualified expert testimony, Redekop could not meet its burden of proof.[3] Redekop's counsel explained his noncompliance,

---

3. Redekop claims that Prudential's second motion for summary judgment—raising the issues we consider in this appeal— "addressed the issues litigated in" its first motion for summary judgment. To the contrary, Prudential states that the first motion for summary judgment was denied because Prudential "had

(continued…)

stating that from "late-July 2014 through September 2014, [he] was mostly incommunicado professionally due to an apparent breach of [his] security and violation of [his] privacy in connection with an unrelated and highly contentious client matter." The district court rejected Redekop's explanation and excluded its expert witness and report as a sanction for noncompliance with the 2014 Scheduling Order. The district court stated that Redekop's counsel's security breach in late July "could not have affected [Redekop's] ability to make timely disclosures one month earlier on June 12, 2014," and that Redekop's counsel "did not communicate with opposing counsel about this problem, or seek a timely extension of time from the Court." Redekop, thus, had not shown "good cause" why it could not comply with the 2014 Scheduling Order. The district court also found that Redekop did not comply with rule 26, because it "did not disclose the qualifications, compensation, or prior casework of any particular person working for or with Pontis Architectural Group." Citing rule 37 of the Utah Rules of Civil Procedure, the district court found

---

(…continued)

failed to establish that no genuine issue of material fact existed as to Redekop's need for expert testimony on the standard of care required of a limited real estate agent." The memorandum decision denying the first motion acknowledged Prudential's argument regarding the need for expert testimony as to the duties of a limited real estate agent, but also stated that at that time there was "evidence in the record evidencing a genuine issue of material fact as to the square footage of the Premises." However, the denial of the earlier motion is not material to our analysis. The district court's decision did not resolve the issue of whether expert testimony was needed on the issue of square footage. Furthermore, the entry of the 2014 Scheduling Order rendered any prior procedural loose ends largely irrelevant.

no good cause for [Redekop's] failure to make expert discovery disclosures timely. The non-disclosure was willful. It was also prejudicial to [Prudential] as it rendered [Prudential] incapable of deposing [Redekop's] experts, attempting to disqualify the experts, and finding rebuttal experts.

¶8 The district court next determined that expert testimony was needed "as to the manner in which commercial square footage is calculated in the commercial real estate industry." It noted the "common areas and storage space in the building" and questioned the "manner and . . . methodology" by which these "shared spaces [were] allocated to each commercial unit." It stated its belief that the "average bystander could not provide testimony related to these issues." (Citing *State v. Rothlisberger*, 2006 UT 49, ¶ 34, 147 P.3d 1176.) Thus, the district court held that "[w]ithout the testimony of [Redekop's] expert, the testimony of [Prudential's] expert—that the square footage of the building was equal to or exceeded the square footage promised to [Redekop]—stands unrebutted." Accordingly, the district court granted summary judgment in Prudential's favor.

ISSUES AND STANDARDS OF REVIEW

¶9 Redekop first argues that it substantially complied with the 2014 Scheduling Order and therefore no sanctions were warranted. Redekop further asserts that the district court's exclusion of his expert witness was an abuse of discretion. We review a district court's imposition of sanctions by first ensuring that the district court has expressly found that the party's behavior merits sanctions. *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957. If such a finding has been made, we will disturb the sanction only if the district court clearly abused its discretion, i.e., if the court relied on an erroneous conclusion of law or if no evidentiary basis supports the court's ruling, keeping in mind that, "[a]s a general rule, district courts

are granted a great deal of deference in selecting discovery sanctions." *Id*. (citation and internal quotation marks omitted).

¶10    Redekop next argues that summary judgment was unwarranted because "expert opinion [was] not needed in this matter." An appellate court reviews a district court's conclusion that expert testimony is required for correctness. *See Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 20, 329 P.3d 815 (affirming in part because the district court did not err in determining that expert testimony was required).

ANALYSIS

I. The District Court Did Not Exceed Its Discretion When It Excluded Redekop's Expert as a Rule 37 Sanction for Willful Noncompliance with the Court's Order.

¶11    Redekop contests the district court's ruling excluding its expert witness as a rule 37 sanction for willful noncompliance with the court's 2014 Scheduling Order. Redekop argues that it sufficiently complied with the 2014 Scheduling Order and that the sanction was merely a "docket-clearing exercise [and thus] was an abuse of the District Court's discretion." Prudential responds that Redekop's inadequate disclosure was "so grossly deficient that it amounted to a non-disclosure" and that the district court did not abuse its discretion by excluding Redekop's expert witness as a sanction under rule 37.

¶12    The district court found that there was "no good cause" for Redekop's "failure to make expert disclosures timely." It also found that the "non-disclosure was willful" and that Redekop's failure had prejudiced Prudential by rendering Prudential "incapable of deposing [Redekop's] experts, attempting to disqualify the experts, and finding rebuttal experts." Thus, the

district court excluded Redekop's expert witness "in accordance with Rule 37."

¶13    Rule 16 of the Utah Rules of Civil Procedure "gives the district court broad authority to manage a case." *Coroles v. State*, 2015 UT 48, ¶ 19, 349 P.3d 739 (citation and internal quotation marks omitted); *see also, e.g.*, *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 32, 280 P.3d 425 ("Where the trial court finds that a party acted willfully, rule 37 of the Utah Rules of Civil Procedure allows it to impose sanctions. Once the court makes this threshold finding, the choice of an appropriate discovery sanction is primarily the responsibility of the trial judge." (citation and internal quotation marks omitted)). Our supreme court has cautioned that "where the exclusion of an expert is tantamount to the dismissal of the lawsuit, . . . the district court should exercise restraint in choosing this grave step rather than a lesser sanction." *Coroles*, 2015 UT 48, ¶ 29. But it also has declared that "[o]ur already overworked district court judges should not be required to provide remedial instructions to counsel on how to properly conduct discovery, designate trial exhibits, or prepare expert reports." *Dahl v. Dahl*, 2015 UT 79, ¶ 83, 794 Utah Adv. Rep. 5. "Pretrial discovery and disclosure are basic skills that we expect all attorneys to possess." *Id*. Thus, "'it is within a trial court's discretion to impose such a sanction.'" *Allen*, 2012 UT App 162, ¶ 32 (quoting *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997)). Our "deferential review recognizes that trial courts must deal first hand with the parties and the discovery process." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (citations and internal quotation marks omitted). Thus, "we overturn a sanction only in cases evidencing a clear abuse of discretion." *Id*. And a trial court does not clearly abuse its discretion in choosing a sanction, even a harsh one, unless "there is either an erroneous conclusion of law or . . . no evidentiary basis for the trial court's ruling." *Allen*, 2012 UT App 162, ¶ 32 (omission in original) (citation and internal quotation marks omitted).

¶14    While a district court judge enjoys "broad discretion in determining how a [case] shall proceed in his or her courtroom," *Steffensen-WC, LLC v. Volunteers of America of Utah, Inc.*, 2016 UT App 49, ¶ 12, 369 P.3d 483 (alteration in original) (citation and internal quotation marks omitted), before a district court may impose discovery sanctions under rule 37, "the court must find on the part of the noncomplying party willfulness, bad faith, or fault." *Morton*, 938 P.2d at 274. "To find that a party's behavior has been willful, there need only be any intentional failure as distinguished from involuntary noncompliance." *Id.* at 276 (citation and internal quotation marks omitted). "Once the trial court determines that sanctions are appropriate, [t]he choice of an appropriate discovery sanction is primarily the responsibility of the trial judge." *Id.* at 274 (alteration in original) (citation and internal quotation marks omitted).

¶15    The district court found that Redekop acted "willfully" and found "no good cause" for its failure to timely disclose an expert in accordance with rule 26. Rule 26(a)(3) requires parties to identify each expert witness and provide a written report prepared and signed by the party or expert. The report must include (1) "the subject matter on which the expert is expected to testify"; (2) "the substance of the facts and opinions to which the expert is expected to testify"; (3) "a summary of the grounds for each opinion"; (4) "the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years"; (5) "the compensation to be paid for the study and testimony"; and (6) "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Utah R. Civ. P. 26(a)(3)(B). Under the 2014 Scheduling Order, Redekop had until June 12, 2014, to designate an expert witness and provide a compliant report to Prudential. Redekop did not provide an expert witness report by the stipulated deadline and attempted to excuse its failure to do so—and its lack of communication with the district court and opposing counsel—by explaining that

its counsel had experienced a security breach and was "mostly incommunicado professionally" from "late-July 2014 through September 2014." And only when pressed—and at the close of all expert witness discovery—did it designate three possible witnesses from Pontis Architectural Group, any one of whom might testify. Thus, the district court found that Redekop

> disclosed only the name of Pontis Architectural Group and the floor plans of the commercial property in dispute. The plans did contain square footage calculations, but these figures were conclusory. [Redekop] did not disclose the subject matter of the expert's expected testimony, the substance of the facts and opinions on which the expert would testify, or the grounds for each opinion. [Redekop] did not disclose the qualifications, compensation, or prior casework of any particular person working for or with Pontis Architectural Group.

Consequently, the district court determined that there was "no good cause" for this "willful" and untimely disclosure.

¶16     Given these facts and the evidence supporting them, we discern no abuse of discretion in the district court's exclusion of Redekop's expert witness and report as a rule 37 sanction. *See Dahl*, 2015 UT 79, ¶ 83 ("Our courts rely heavily on the competence and diligence of counsel. The evidentiary rulings [the appellant] complains of were largely the result of her counsel's inability to follow basic rules of procedure and properly manage discovery.").

## II. The District Court Did Not Err in Determining that Expert Testimony Was Needed in This Case.

¶17     Redekop next argues that an expert is not needed to testify as to the Premises' square footage because "the precise

measurement of the Premises is not important," a "layperson can measure an office and testify as to those measurements," and a "trier of fact can determine what to think of those lay measurements." Prudential responds, however, that "[s]pecialized knowledge is required to properly calculate the square footage" of the Premises because commercial real estate square footage calculations "must take into account any common areas in the building such as the lobby and waiting areas, restrooms, elevator shafts, storage areas, etc." Prudential further explains that

> [e]ach tenant in the building is assessed a share of these common areas (referred to in the industry as "core factor") based on the amount of space the tenant occupies, the amount of rent the tenant pays, the location of the tenant within the building, and the relative importance of the tenant to the building.

¶18    As Redekop explains, the "disputed issue addressed in this matter"—and the underpinning of all of its claims—"is whether the rentable square footage at the [Premises] was overstated by [Prudential]." For Redekop to show that the square footage of the Premises was less than promised, as the district court determined,

> [e]xpert testimony [was] needed as to the manner in which commercial square footage is calculated in the commercial real estate industry. For example, there are common areas and storage space in the building. In what manner and by what methodology are these shared spaces allocated to each commercial unit? The average bystander could not provide testimony related to these issues.

In other words, the district court concluded that a jury could find that Prudential had overstated the rentable square footage

of the Premises only if the jury could understand the methodology and standards employed by real estate agents in calculating a property's rentable square footage.

¶19   An appellate court reviews for correctness a district court's conclusion that expert testimony is required. *See Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 20, 329 P.3d 815 (holding that the district court did not err in determining that expert testimony was required). The "test for determining whether testimony must be provided by an expert is whether the testimony requires that the witness have scientific, technical, or other specialized knowledge; in other words, whether an average bystander would be able to provide the same testimony." *State v. Rothlisberger*, 2006 UT 49, ¶ 34, 147 P.3d 1176. Furthermore, "expert testimony *is necessary* in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation." *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 15, 337 P.3d 1044 (emphasis added); *id.* (noting that in cases involving a standard of care, "expert testimony is necessary . . . where the particularities of the alleged standard of care do not reside within the common knowledge and experience of a lay juror."). And, "[o]rdinarily, the standard of care in a trade or profession must be determined by testimony of witnesses in the same trade or profession." *Townhomes at Pointe Meadows*, 2014 UT App 52, ¶ 20 (citation and internal quotation marks omitted).

¶20   We conclude that the district court correctly determined that the question of how square footage is calculated in commercial real estate, including consideration of a "core factor," was key to Redekop's claims; it is not a question that a lay person can answer, even though such persons would likely be able, without an expert's help, to find a tape measure and a friend and measure the square footage of their own living room. For a jury to arrive at a conclusion regarding a square footage

assessment in the realm of commercial real estate would indeed require the jury to engage in speculation. Therefore, the district court's determination that an "average bystander" could not provide reliable testimony as to the manner and methodology by which commercial real estate is measured is not erroneous.

## CONCLUSION

¶21　The district court did not exceed its discretion when it excluded Redekop's expert as a rule 37 sanction after Redekop failed to comply with the court's order. The district court also correctly concluded that expert testimony was required in this case. Accordingly, we affirm.

————————