**Gary HUNT, Plaintiff and Appellant,**

v.

**ESI ENGINEERING, INC., a corporation, Domtar Industries, Inc., a corporation, Lake Point Salt Co., a corporation, and John Does I through X, Defendants and Appellees.**

No. 890719–CA.

Court of Appeals of Utah.

April 3, 1991.

Glen A. Cook, Robert J. DeBry & Associates, Salt Lake City, and Gordon K. Jensen (argued), Goicoechea Law Offices—West Valley, West Valley City, for plaintiff and appellant.

Craig R. Mariger (argued), Jones, Waldo, Holbrook & McDonough, Salt Lake City, for defendants-appellees.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Gary Hunt (Hunt) appeals from a summary judgment entered in favor of ESI Engineering, Inc. (ESI). We affirm.

On August 30, 1985, Gary Hunt was injured at the Sol–Aire Salt and Chemical Company Salt Wash Plant (the plant) in Tooele County, Utah, where he was employed as salt wash plant operator. He was injured when his left hand was pulled through the nip (pinch) point of the tail pulley of a conveyor belt.

The salt cleansing plant was comprised of ramps supported by retaining walls which permitted large trucks to drive over a grizzly (screen) upon which the salt was dumped by the trucks. The salt fell through the grizzly into one of two wet salt bins and then into the corresponding immersion washer. The salt was then carried by screw conveyors from both immersion washers onto corresponding wire mesh conveyors, which ran parallel to each other. The wire mesh conveyors partially dewatered the salt and then discharged the salt onto the transfer conveyor. The transfer conveyor was a nylon-corded rubber belt conveyor, which ran perpendicular to the wire mesh conveyors. The upper belt of the transfer conveyor moved salt from north to south. The lower portion of the transfer conveyor belt moved south to north where it wrapped around the tail pulley of the transfer conveyor in a counter-clockwise rotation. When the salt reached the southern end of the transfer conveyor, it was deposited onto the long belt as the transfer conveyor belt moved around the head pulley. The long belt carried the salt to the stacking conveyor, a movable incline conveyor, which deposited the salt in storage piles. Hunt was injured when his left hand and arm were pulled into the tail pulley of the transfer conveyor.

The plant was designed and constructed in 1982 and 1983; it was first operated during the summer of 1983. At that time, the plant was owned by Lake Point Salt Company (Lake Point). Engineering Associates, Inc., an engineering firm which later became known as ESI, was retained in May of 1982 to provide the structural engineering design of the salt washing facilities at the plant. ESI prepared two drawings for Lake Point which depicted the transfer conveyor, an open web steel joist frame to support the conveyor, and the footing detail for support of the transfer conveyor. These drawings did not include details for the transfer conveyor, such as the type of tail pulley, or its safety guards, the type of idlers, whether the tail pulley was self-cleaning or non-self-cleaning, or the type of conveyor belt or conveyor belt splice to be used, which were left up to the discretion of Lake Point. ESI last performed engineering services on the plant in 1983.

Lake Point, which had considerable experience in the construction of conveyors, constructed the transfer conveyor which injured Hunt. It determined which parts to utilize for the operating components of the conveyor, which were not shown on ESI's drawings, including the tail pulley, idlers, conveyor belt splice and conveyor belts. In fabricating the transfer conveyor, it did construct an open web steel joist frame, as depicted in ESI's drawings.

The plant operated with the open web steel joist frame supporting the transfer conveyor during the 1983 and 1984 seasons, and part of the 1985 season. However, sometime prior to the accident in the 1985 season, Lake Point removed the open web steel joist frame and replaced it with a channel iron frame. The latter was in place on the day of the accident.

Following the accident, Hunt brought this negligence action against ESI and several other defendants. This appeal concerns only ESI. Hunt claims that ESI designed the transfer conveyor and was negligent in failing to depict a tail pulley guard in regards thereto, the construction of

which may have prevented Hunt's injury. ESI moved for summary judgment on the ground that the transfer conveyor which injured Hunt was not designed by ESI.[1] The trial court granted ESI's motion, and Hunt appealed, raising the following issue: did the trial court err in concluding that ESI did not design the transfer conveyor which injured Hunt on August 30, 1985?

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Transamerica v. Dixie Power*, 789 P.2d 24, 25 (Utah 1990). The facts and inferences to be drawn therefrom are viewed in the light most favorable to the losing party and are affirmed only where it appears that there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law. *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989) (citing *Themy v. Seagull Entertainment Inc.*, 595 P.2d 526, 528–29 (Utah 1979)). *See also Parents Against Drunk Driving v. Graystone*, 789 P.2d 52, 54 (Utah Ct.App.1990). However, it is Hunt's burden to show that there are specific material facts which preclude a grant of summary judgment. *Thornock v. Cook*, 604 P.2d 934, 936 (Utah 1979); *see also Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982). Since summary judgment is granted as a matter of law rather than fact, the trial court's legal conclusions are reviewed for correctness. *Bergen v. Travelers Ins. Co.*, 776 P.2d 659, 662 (Utah Ct.App.1989).

In granting ESI's motion for summary judgment, the trial court concluded that ESI did not design the transfer conveyor which injured Hunt. The initial issue, therefore, is whether ESI actually had any design responsibility as to the operating components and safety devices of the transfer conveyor which injured Hunt. After reviewing the record, we affirm the trial court's conclusion that ESI did not.

It is clear that in negligence cases, a designer has a "duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176, 186 (1984). *See also Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wash.App. 432, 739 P.2d 1177, 1182–83 (1987) (a designer is required under negligence principles to design a reasonably safe product); *Mather v. Caterpillar Tractor Corp.*, 23 Ariz.App. 409, 533 P.2d 717, 719 (1975) (a design defect arises when the designer has failed to use reasonable care in designing its product, rendering such product unsafe for intended uses); Restatement (Second) of Torts § 398 (1965). However, it is equally clear that one cannot be held liable for a defective design if one did not, in fact, create such design.

In the case at bar, the uncontroverted deposition testimony of J. Frank Bonell, ESI's current president, and James R. Palmer, vice-president and general manager of Sol–Aire Salt Company, substantiates the trial court's grant of summary judgment. This testimony clearly indicates that ESI served solely as structural engineers for the plant and did not have any design responsibility as to the operating components of the transfer conveyor. Bonell testified as follows:

Q: [F]or Lake Point Salt, you designed a salt conveyor system; is that correct?

A: I designed a preliminary salt washing plant for Lake Point Salt, in which I did the basic structural design of the components.

And later:

Q: Anything else that you recall about the scope of your assignment for—

A: The scope of my assignment was to provide structural details.... [W]e did not have a contract to design all phases or all components of the system.

Palmer's uncontroverted testimony stated that:

A: [T]he general outline from [ESI] was followed; however, our people have ex-

---

1. ESI also moved for summary judgment on several other grounds, which are not presently

before this court.

pertise and knowhow in fabricating these various pieces of equipment so it isn't necessary for the engineer to draw a detailed outline, only a general plan, like [Bonell] did on this plan....

And also:

A: In our relationship with ESI Engineering, because—due to the ability of our—our people and in order—because we did not have to put this out on bid, there were many items that we had on hand that would be used in various parts of the construction, including take-ups and other components of the [transfer] conveyor.

Q: But your employees would make the decision what take-up to use and what pulley to use?

A: That is right.

Q: And that decision wouldn't be made by ESI Engineering, would it?

A: No.

The exhibits (drawings and photographs) also substantiate that ESI did not design the transfer conveyor which was involved in the accident. In fact, the only specific ESI drawing pertained to the footing detail and the support for this conveyor, that is, the open web steel joist frame. And, the latter was not even in place on the date of the accident, having been replaced by Lake Point with a different frame prior to the accident.

The evidence is uncontroverted that ESI did not design the transfer conveyor which was in place at the time of the accident, and the trial court was correct in granting summary judgment. Accordingly, we affirm.

BENCH and JACKSON, JJ., concur.