2021 UT App 6

# THE UTAH COURT OF APPEALS

ANDREW BLANK AND KATHLEEN BLANK,
Appellants,
*v.*
GARFF ENTERPRISES INC., MERCEDES BENZ US INTERNATIONAL,
AND MERCEDES BENZ USA LLC,
Appellees.

Opinion
No. 20190070-CA
Filed January 22, 2021

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 110907788

Kevin N. Anderson, Matthew S. Brahana, and
Charles M. Auslander, Attorneys for Appellants

John A. Anderson, Lauren DiFrancesco, Justs N.
Karlsons, Garrett Sanderson III, and David M. Rice,
Attorneys for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1     Andrew and Kathleen Blank appeal the district court's orders dismissing their products liability claims against the manufacturer, retailer, and distributor of their vehicle. In their suit, the Blanks alleged that their vehicle was not crashworthy and that defects in the vehicle caused them to suffer more severe injuries than they otherwise would have when a drunk driver rear-ended them. On appeal, they argue that the district court abused its discretion by excluding expert declarations and subsequently granting summary judgment dismissing the claims

relating to Kathleen's injuries. They also allege that the court improperly entered a directed verdict on Andrew's negligence claim. Further, they argue that the district court made several evidentiary errors, the cumulative impact of which requires reversal. We conclude that the district court correctly granted summary judgment on the claims related to Kathleen's injuries, correctly entered a directed verdict on Andrew's negligence claim, and that any evidentiary errors were harmless. Accordingly, we affirm.

## BACKGROUND

¶2    Kathleen and Andrew Blank were involved in an automobile collision in 2009. Kathleen was driving their 2008 Mercedes sport utility vehicle (the SUV) with Andrew in the passenger seat. On a freeway near Salt Lake City, the Blanks were rear-ended by a BMW vehicle traveling over 100 miles per hour. The driver of the BMW was intoxicated, and the collision killed one of his passengers.[1]

¶3    The force of the BMW's impact sent the SUV careening into a metal guardrail. The collision with the guardrail caused the passenger-side curtain airbag to deploy. Then, the SUV struck a metal support pole, which caused the driver-side front airbag to deploy. The BMW once again struck the SUV, ultimately causing a partial rollover in which the SUV tipped on its side before righting itself. The Blanks sustained serious injuries.

---

1. The driver of the BMW was convicted of manslaughter and driving under the influence and he is currently serving a prison term. Prior to the resolution of this case, the Blanks resolved civil claims against the driver, along with his employer, co-workers, and the bar where the driver had been drinking.

¶4 On March 31, 2011, the Blanks filed suit against Mercedes Benz US International, the manufacturer of the SUV; Mercedes Benz USA LLC, the United States distributor of the SUV; and Garff Enterprises Inc., the ultimate seller of the SUV (collectively, Mercedes). Their complaint alleged claims on behalf of both Kathleen and Andrew for negligence, strict products liability, and loss of consortium. The Blanks' claims relied on the theory that "their injuries had been enhanced due to the presence of defects related to the airbag system, the sensor system built into the passenger seat, and the passenger seat."

¶5 On December 17, 2016, after liability discovery had closed,[2] Mercedes moved for summary judgment, seeking dismissal of Kathleen's claims and Andrew's loss of consortium claim, all of which relied on a theory that a defect on the driver side of the SUV exacerbated Kathleen's injuries. Mercedes argued that Kathleen had presented no evidence that a defect in the driver side of the SUV contributed to her injuries.

¶6 In response to the motion, the Blanks submitted three new declarations from their experts that, for the first time, contained their opinions that a defect in the SUV enhanced Kathleen's injuries. Specifically, the Blanks attached declarations from two liability experts who had confirmed in their prior depositions that they did not attribute Kathleen's injuries to any defect in the vehicle. The Blanks also attached a declaration from one of their damages experts, a neuropsychologist, who opined that "the brain injury [Kathleen] sustained was brought on by multifactorial processes, probably initiated with the first impact

2. The district court had bifurcated expert discovery between liability discovery and damages discovery. While liability-expert discovery had closed at the time Mercedes moved for partial summary judgment, damages-expert discovery was still ongoing.

but then also influenced by rotational forces and the secondary impact associated with the rollover" and that "these biomechanical factors sum together to result in the significant traumatic brain injury that Kathleen Blank sustained in this motor vehicle accident." Mercedes moved to strike the declarations, arguing that they were "sham affidavits" or, alternatively, that they contravened rule 26 of the Utah Rules of Civil Procedure, which requires parties to timely supplement their discovery disclosures.

¶7     The district court struck the new declarations, reasoning that the Blanks failed to comply with rule 26. It further reasoned that without the new declarations, Kathleen could not establish that the SUV contained a defect that caused her enhanced injuries. Therefore, the district court granted Mercedes's motion for summary judgment and dismissed Kathleen's strict liability and negligence claims, along with Andrew's loss of consortium claim.

¶8     Andrew's remaining claims, along with Kathleen's loss of consortium claim, were tried to a jury. At trial, both sides presented extensive evidence as to whether the SUV contained a defect, how such a defect enhanced Andrew's injuries, and the extent of his damages. The jury also heard evidence describing the role of the drunk driver, his employer and co-workers, and the bar that served him alcohol before the collision, so that the jury could apportion comparative fault if it found Mercedes liable.

¶9     At the close of evidence, Mercedes moved for a directed verdict on Andrew's negligence claim. Mercedes primarily argued that the Blanks had not presented sufficient evidence as to the standard of care for an auto manufacturer, whether the parties breached that standard, and whether a safer alternative design for the passenger seat existed. The court granted the directed verdict.

¶10     The jury ultimately returned a special verdict finding that the SUV did not contain a defect. Because the jury found that no defect existed, it did not reach the issues of damages or comparative fault. On December 28, 2018, the district court entered a final judgment in favor of Mercedes.

ISSUES AND STANDARDS OF REVIEW

¶11     The Blanks now appeal, raising three issues. First, they contend that the district court erred by applying rule 26 of the Utah Rules of Civil Procedure, rather than rule 16, when it struck the new expert declarations. "Interpretation of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *Pete v. Youngblood*, 2006 UT App 303, ¶ 7, 141 P.3d 629. The Blanks further argue that, having struck the declarations, the district court improperly granted Mercedes's motion for summary judgment. "This court . . . reviews a district court's entry of summary judgment for correctness and gives its conclusion of law no deference." *Ghidotti v. Waldron*, 2019 UT App 67, ¶ 8, 442 P.3d 1237 (cleaned up).

¶12     Second, the Blanks argue that the district court erred by granting Mercedes's motion for a directed verdict on Andrew's negligence claim. Specifically, they contend that "there was sufficient evidence presented on each negligence element." We review the district court's "grant or denial of a motion for directed verdict for correctness" and "will sustain a directed verdict if, after examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the nonmoving party's favor." *Francis v. National DME*, 2015 UT App 119, ¶ 22, 350 P.3d 615 (cleaned up).

¶13     Third, the Blanks argue that the court erred by "admitting over objection irrelevant and excessively prejudicial evidence the

cumulative impact of which requires reversal of the jury's verdict." "A district court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion, unless it involves a legal question, which is reviewed for correctness." *McKelvey v. Hamilton*, 2009 UT App 126, ¶ 17, 211 P.3d 390 (cleaned up).

ANALYSIS

I. Summary Judgment on Claims relating to Kathleen's Injuries

¶14    On appeal, the Blanks first argue that the district court improperly granted Mercedes's motion for partial summary judgment after striking the expert declarations the Blanks submitted in response to that motion. "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Simons v. Sanpete County*, 2018 UT App 106, ¶ 8, 427 P.3d 467 (quoting Utah R. Civ. P. 56(a)).

¶15    The Blanks challenge the summary judgment ruling on two alternative grounds. First, they argue that the district court abused its discretion in striking their new expert declarations, asserting that it applied the wrong legal standard. Alternatively, they argue that even if the court properly struck the declarations, summary judgment should have been denied because the expert testimony at issue was not necessary to prove Kathleen's claims. We address each argument in turn.

A.    Exclusion of Declarations

¶16    The Blanks argue that the district court misapplied the Utah Rules of Civil Procedure in excluding their expert

declarations regarding the cause of Kathleen's enhanced injuries.[3] The court reasoned that the opinions had not been timely disclosed pursuant to rule 26, thereby triggering the application of rule 37, requiring exclusion unless the proponent can demonstrate that the nondisclosure was either harmless or excused by good cause. The Blanks argue that their expert disclosures were merely late under rule 16 and that the court had the discretion to fashion a less drastic remedy than exclusion of the evidence. We conclude that the court correctly applied rules 26 and 37(f) of the Utah Rules of Civil Procedure, rather than rule 16.

¶17 Subsection (a)(3)(C) of rule 26 requires that expert testimony disclosures occur within 30 days of the expiration of fact discovery "or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . , within 60 days after the disclosure made by the other party." Utah R. Civ. P. 26(a)(3)(C) (2010).[4] Further,

---

3. On appeal, the Blanks contest only the exclusion of the two declarations from their liability experts. They do not address the third declaration from their damages expert nor do they attempt to explain whether the court's exclusion of that declaration was erroneous.

4. Rules 26 and 37 of the Utah Rules of Civil Procedure were amended in 2011; however, these amendments apply only to cases filed on or after November 1, 2011, and are therefore not applicable to this case. *See* Utah R. Civ. P. 1 advisory committee's notes to 2011 amendment; *see also Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 13 n.2, 329 P.3d 815 (explaining that revised rules 26 and 37 are not retroactively applicable). Accordingly, we cite the 2010 versions of these rules throughout this opinion.

subsection (e)(1) creates "a duty to supplement at appropriate intervals disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect." *Id.* R. 26(e)(1).

¶18    The advisory committee notes to rule 26 explain that, "if a party fails to comply with the disclosure rule, Rule 37(f) requires the court to prohibit the use of the witness or evidence at trial unless the failure was harmless or there is good cause for the failure." *Id.* R. 26 advisory committee's notes to 1999 amendments. Rule 37(f) codifies that standard, stating that when

> a party fails to disclose a witness, document or other material as required by Rule 26(a) or Rule 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), that party shall not be permitted to use the witness, document or other material at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose.

*Id.* R. 37(f).

¶19    On the other hand, rule 16(d) of the Utah Rules of Civil Procedure applies "when evidence is produced late under the scheduling order." *Coroles v. State*, 2015 UT 48, ¶ 23, 349 P.3d 739. The rule gives the court discretion to "take any action authorized by Rule 37(b)(2)" to remedy a late disclosure. *See* Utah R. Civ. P. 16(d). Rule 37(b)(2) lists various sanctions available to the court, including ordering "the party or the attorney to pay the reasonable expenses . . . caused by the failure." *See id.* R. 37(b)(2)(D). Our supreme court has highlighted the practical difference between the rules, explaining that "[w]hile rule 16(d) leaves the decision of whether to

sanction a party to the broad discretion of the district court," rule 37(f)[5] "imposes a structure whereby the court 'shall' exclude an undisclosed witness [or document] 'unless' the party shows either harmlessness or good cause." *Coroles*, 2015 UT 48, ¶ 22 (quoting Utah R. Civ. P. 37(f)).

¶20 Here, as the district court noted, the Blanks designated several liability experts who, in their "Rule 26 expert reports, rebuttal reports, and in deposition, . . . identified purported defects in the passenger-side seat and restraint systems, but did not identify any defects in the driver-side seat and restraint systems," where Kathleen was seated at the time of the collision. Mercedes designated its own liability experts, disclosed their written reports, and made the experts available for depositions. The last deposition of a liability expert took place on January 7, 2016.

¶21 On December 17, 2016, after expert discovery on liability issues had closed, Mercedes filed its motion for summary judgment. At that point, the Blanks' experts had provided no testimony to support the claim that a defect contributed to Kathleen's injuries. It was not until January 17, 2017—over a year after deposing the last liability expert—that the Blanks submitted declarations opining that there was a defect in the driver-side airbags. This was not a case where the Blanks simply disclosed new opinions late under a scheduling order. Instead, they failed to disclose the opinions at all until after liability discovery had closed and a summary judgment motion had been filed. By failing to timely supplement their expert disclosures with evidence that a defect had caused Kathleen's injuries—and

---

5. In 2014, subsection (f) of rule 37 was located in subsection (h). *Compare* Utah R. Civ. P. 26 (2010), *with id.* (2014). As a result, *Coroles* refers to rule 37(h) when interpreting the relevant language.

only doing so after the filing of a dispositive motion that relied on the fact that no such evidence had been disclosed during liability discovery—the Blanks plainly violated rule 26.

¶22 The failure to comply with the disclosure requirements of rule 26 triggered the application of rule 37, requiring the exclusion of that evidence unless the Blanks showed that their failure to disclose was either harmless or excused by good cause. "Accordingly, the proper inquiry [on appeal] is whether the district court abused its discretion in determining that the [Blanks'] failure to disclose was not harmless and that good cause did not excuse [their] failure." *See Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, ¶ 24, 370 P.3d 963 (cleaned up). We conclude that both determinations were well within the court's discretion.

¶23 First, the district court found that the failure to disclose was not harmless. As the court aptly noted, "the orderly resolution of cases, particularly complex cases such as this one, require[s] timely disclosure and the ability to rely on what has—and has not—been disclosed to chart out the next steps to move litigation to conclusion." At a minimum, the Blanks' supplemental expert disclosures would have required reopening liability discovery, delaying the resolution of the case and increasing the expense of litigation. Parties rely on rule 26 disclosures to "make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 25, 392 P.3d 956. If the Blanks had disclosed their expert testimony linking Kathleen's injuries to a defect in the SUV, it would have informed Mercedes's approach to discovery, as well as the opinions reached by their own experts. In addition, Mercedes relied on the lack of expert testimony when it incurred the effort and expense of preparing a motion for summary judgment on Kathleen's claims. *See Segota v. Young 180 Co.*, 2020 UT App 105, ¶ 22, 470 P.3d 479 (affirming the district court's

determination that the discovery violations were not harmless, in part because the failure to disclose "caused the defendants to file and litigate motions, necessitating the expenditure of attorney fees and costs"). We agree with the district court that "[a]llowing parties to disclose expert opinions that are central to a case only in response to a dispositive motion would seriously frustrate the orderly resolution of these kinds of cases." Under these circumstances, the district court acted well within its discretion in concluding that the Blanks' failure to comply with rule 26 was not harmless.

¶24    Second, the district court found that the Blanks could not show good cause for their failure to timely supplement the disclosures. The Blanks contend that good cause exists because their experts' new opinions were based on new information learned after Mercedes's experts had been deposed. As an initial matter, the Blanks had the burden of proving the existence of a defect that contributed to Kathleen's injuries as part of their prima facie case, independent from any expert testimony that Mercedes might offer. *See Burns v. Cannondale Bicycle Co.*, 876 P.2d 415 ("[A] products liability claim requires proof of a specific defect, which in turn caused the plaintiff's injury."). In any event, the depositions of Mercedes's experts occurred more than a year prior to the supplemental disclosure. The district court found that the experts had "all the information they would have needed to form these opinions at the time of their reports or by the time of their depositions (and definitely knew everything they needed to know after the completion of depositions of [Mercedes's] liability experts)." Yet the Blanks did not supplement their expert disclosures at any of these points and instead waited until Mercedes's motion for partial summary judgment was filed. Because the Blanks have not shown that the failure to disclose was either harmless or excused by good cause, the district court correctly excluded the evidence under rule 37(f).

B.      Necessity of Expert Testimony

¶25    Having excluded the opinions contained in the new expert declarations, the district court granted Mercedes's motion for partial summary judgment on Kathleen's strict liability and negligence claims and Andrew's loss of consortium claim because the Blanks had presented no evidence to support their theory that a defect on the driver side of the SUV caused Kathleen's enhanced injuries. The Blanks argue that even if the court properly struck the new declarations, the remaining evidence supporting those claims was sufficient to defeat summary judgment.

¶26    "A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the elements of the prima facie case justifies a grant of summary judgment to the defendant." *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 7, 263 P.3d 1191 (cleaned up). Here, the Blanks asserted three causes of action relating to the enhanced injuries Kathleen allegedly sustained in the crash. "An enhanced injury occurs when an injury caused by some other event is increased or enhanced due to a defective product." *Egbert v. Nissan Motor Co.*, 2010 UT 8, ¶ 23, 228 P.3d 737. To establish a claim for either strict liability or negligence, Kathleen was required to prove, among other things, that the SUV was defective and that the defect caused her enhanced injuries.[6] *See Niemela*, 2011 UT App 333,

---

6. "A plaintiff must prove three elements to succeed in a strict products liability suit: (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries." *Niemela v. Imperial Mfg., Inc.,* 2011 UT App 333, ¶ 8, 263 P.3d 1191 (cleaned up). "A plaintiff claiming negligence in this context

(continued…)

¶¶ 9–10, 17, 22. Andrew's derivative claim for loss of consortium depended on the viability of Kathleen's products liability claims as well. *See Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 24, 176 P.3d 446 (citing Utah Code Ann. § 30-2-11(5)(a), (b)).

¶27 Before the Blanks' opposition to Mercedes's motion for partial summary judgment, no expert witness had opined that a defect in the driver side of the SUV caused Kathleen to suffer enhanced injuries. It was only in the three declarations attached to their opposition, which the court ultimately excluded, that the experts opined that the non-deployment of the driver-side curtain airbag constituted a defect rendering the SUV unreasonably dangerous and that the defect had enhanced Kathleen's injuries. Once the court struck the three declarations, the Blanks had no expert testimony to establish a defect in the SUV that caused Kathleen's enhanced injuries.

¶28 However, the Blanks contend that "even in the absence of conflicting plaintiffs' expert testimony, the facts presented by [Mercedes] sufficed to defeat summary judgment." Specifically, the Blanks contend that there was a question of fact as to whether, in the absence of a defect, the driver-side curtain airbag should have deployed during the partial rollover. Although Mercedes's experts opined that Kathleen's curtain airbag should not have deployed, the Blanks argue that the jury was free to reject that testimony because "it could be obvious to the layperson that a high-speed crash resulting in several impacts and a rollover event recognized by the airbag control unit but nonetheless not directing the airbag to deploy, was unreasonably dangerous and a foreseeable cause" of Kathleen's enhanced injuries.

---

(…continued)
must prove the ordinary elements of negligence, including duty and causation." *Id.* ¶ 17.

¶29    Utah courts have not squarely decided whether a plaintiff can prove the existence of a defect in a products liability action without expert testimony.[7] But generally in cases involving "scientific matters beyond the capacity of an ordinary juror," expert testimony is needed for plaintiffs to make out a prima facie case. *See Graves v. North E. Services, Inc.*, 2015 UT 28, ¶ 40, 345 P.3d 619. In particular, expert testimony may be necessary in cases that involve trades or professions that require specialized knowledge, "such as medicine, architecture, and engineering." *See Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 20, 329 P.3d 815 (cleaned up) (holding that expert testimony was required to prove construction defect claims). As the district court recognized, "[i]ssues related to the forces necessary to trigger these kinds of

---

7. In a federal case applying Utah law, the United States Court of Appeals for the Tenth Circuit concluded that expert testimony is not required to prove the existence of a defect in a products liability case. *See Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1398 (10th Cir. 1997). In *Taylor*, the federal district court excluded the plaintiff's expert testimony, finding that the expert was not "qualified to testify that the tire failure in this case was the result of a manufacturing defect." *Id.* It then granted a motion to dismiss, believing "that to recover for manufacturing defect under Utah law, a plaintiff is required to prove the element of product defect with expert testimony." *Id.* The Tenth Circuit affirmed the exclusion of the expert's testimony but reversed the dismissal. *Id.* at 1397–98. The court explained, "Our reading of Utah law persuades us that no such rule has been established in Utah and that the general trend in the law is that plaintiffs may prove product defect through circumstantial evidence." *Id.* at 1398. There are no Utah cases citing *Taylor* or otherwise addressing whether the Tenth Circuit's interpretation of Utah law is correct.

safety restraint systems, when they should trigger, and when they should not trigger lest they themselves cause injury to vehicle occupants are complicated engineering issues that are not within the knowledge or experience of average jurors." We agree with the district court that the functioning of an automobile restraint system is the type of specialized knowledge beyond the ken of the average juror.

¶30 In any event, even if the alleged defect had been self-evident, the Blanks provided no evidence to meet their burden of proof on causation. The question of causation is generally reserved for the jury, but the district court "may rule as a matter of law on this issue if there is no evidence to establish a causal connection, thus leaving causation to jury speculation." *Niemela*, 2011 UT App 333, ¶ 22 (cleaned up). "Utah courts generally require expert testimony to prove causation in tort cases in all but the most obvious cases." *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 10, 264 P.3d 752 (cleaned up). Whether "a plaintiff may be excepted from the requirement of using expert testimony to prove causation" often depends on the nature of the injury. *See Niemela*, 2011 UT App 333, ¶ 22 (cleaned up).

¶31 For example, we have required expert witnesses to defeat summary judgment in a "complex case involving obscure medical details, including several brain injuries, and three automobile accidents, each of which could have potentially caused some or all of [the plaintiff's] injuries." *Ladd*, 2011 UT App 355, ¶ 12. In *Ladd*, the plaintiff, a passenger in a pickup truck, was injured after the driver lost control of the vehicle. *Id.* ¶ 2. The pickup rolled and then was struck by two different vehicles. *Id.* The plaintiff sustained substantial injuries. *Id.* The district court granted summary judgment to the defendant because the plaintiff had failed to designate an expert witness regarding causation. *Id.* ¶ 5. We affirmed, agreeing with the district court that without expert testimony establishing causation, the factfinder is invited "not to simply *infer* that the

impact caused his injuries but to *speculate* as to which injuries it caused." *Id.* ¶ 12.

¶32   As in *Ladd*, the district court here recognized that the "jury ultimately will need to decide the degree to which the injuries were caused by a defect . . . and whether those injuries would have been different had the same crash occurred in a crashworthy vehicle." And, as the district court concluded, "[w]ithout the guidance of expert testimony on these complicated questions, the jury would be left to speculate." We agree. Differentiating between any injuries caused by the non-deployment of the airbag and the injuries that would have otherwise occurred as a result of the collision is not within the common knowledge of the average layperson. Thus, expert testimony on causation was required to defeat Mercedes's motion for partial summary judgment.

¶33   Without any expert testimony establishing a causal connection between the claimed defect in the driver-side airbag and Kathleen's alleged enhanced injuries, there was no genuine issue of material fact for trial on those claims. Therefore, the court properly granted Mercedes's motion for partial summary judgment on Kathleen's strict liability and negligence claims, as well as on Andrew's derivative claim for loss of consortium.

## II. Directed Verdict

¶34   Next, the Blanks argue that the district court erroneously granted Mercedes's directed verdict motion on Andrew's negligent design claim. "A motion for directed verdict can be granted only when the moving party is entitled to judgment as a matter of law." *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 21, 417 P.3d 95 (cleaned up). Further, "a trial court is justified in granting a directed verdict only if, examining all evidence in a light most favorable to the non-moving party, there is no competent

evidence that would support a verdict in the non-moving party's favor." *Id.* (cleaned up).

¶35    The designer of a product "has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." *Hunt v. ESI Eng'g, Inc.*, 808 P.2d 1137, 1139 (Utah Ct. App. 1991) (cleaned up). "However, it is . . . clear that one cannot be held liable for a [negligent] defective design if one did not, in fact, create such design." *Id.*

¶36    Here, the Blanks concede that none of the parties to this action was responsible for designing the SUV or its components. Indeed, during the court's discussion of whether to grant the directed verdict on Andrew's negligence claim, the court asked the Blanks to identify what evidence was presented of a negligent design claim against the three entities, to which their counsel replied, "absolutely nothing" and that it "wouldn't be a negligent design claim." Yet in their opening brief on appeal, the Blanks argue solely that evidence supporting a "breach of a duty of care in designing a safe passenger seat" precluded a directed verdict.[8] Because none of the entities designed the SUV or its component parts, they could not be held liable for negligent

---

8. In their reply brief, the Blanks argue that Andrew's negligence claim was not limited to negligent design but also encompassed negligent manufacturing and negligent failure to warn. However, "[w]e do not consider issues raised for the first time in reply briefs." *State v. Boyer*, 2020 UT App 23, ¶ 83 n.13, 460 P.3d 569. In any event, the Blanks' negligent failure to warn claim was dismissed prior to trial, a ruling they do not appeal. And, at oral argument on appeal, counsel for the Blanks conceded that the SUV was manufactured in accordance with design plans and that any negligent manufacturing claim was based on a design defect.

design. Accordingly, we affirm the directed verdict on Andrew's negligence claim.

### III. Evidentiary Errors

¶37 Lastly, the Blanks contend that the court made several evidentiary errors, the cumulative impact of which requires a new trial. However, "an erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 100, 82 P.3d 1076 (cleaned up). "An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings." *Id.* (cleaned up).

¶38 The Blanks contend that the court erred in allowing Mercedes to introduce three categories of improper evidence: (1) evidence relating to the non-party tortfeasors' "immoral and criminal behavior," including evidence related to the drunk driver's behavior before and after the collision; (2) collateral source evidence related to the Blanks' previous lawsuit and settlement with the drunk driver and evidence related to their efforts to obtain additional compensation from their insurance company; and (3) "evidence relating to the Blanks' 'privileged' lifestyle."[9]

¶39 However, none of the challenged evidence relates to whether the SUV contained a defect, which was the only question the jury reached in returning its special verdict. Instead, the challenged evidence went to the amount of damages and the

---

9. The Blanks further argue that the district court erroneously granted Mercedes's motion to exclude evidence of lost profits of Andrew's business. However, because we affirm the jury's verdict, and this evidence relates only to the amount of damages suffered by the Blanks, we need not reach this issue.

relative fault of third parties, questions that the jury had no occasion to reach once it found there was no defect. Even assuming, without deciding, that the challenged evidence was erroneously admitted, the Blanks cannot demonstrate a reasonable likelihood that the evidence impacted the jury's verdict. Therefore, the alleged errors were harmless and do not warrant reversal.

CONCLUSION

¶40　The district court correctly excluded the new expert declarations under rule 37(f) of the Utah Rules of Civil Procedure and properly granted summary judgment on Kathleen's claims and Andrew's loss of consortium claim. Further, the court correctly granted a directed verdict on Andrew's negligent design claim. Lastly, any error made by the district court in admitting certain evidence was harmless. Accordingly, we affirm.

———————