**2024 UT 10**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant*,

*v.*

JON MICHAEL CLARA,
*Appellee*.

No. 20220325
Heard May 8, 2023
Filed March 14, 2024

On Certification from the Court of Appeals

Third District, Salt Lake
The Honorable Todd M. Shaughnessy
No. 191912251

Attorneys:

Sean D. Reyes, Att'y Gen., Andrew F. Peterson, Deputy Solic. Gen., Salt Lake City, for appellant

Ann M. Taliaferro, Kristin G. Wilson, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 This appeal involves the dismissal of a criminal case under the Pretrial Justification Statute. UTAH CODE § 76-2-309(3). The Statute allows a criminal defendant who makes a claim of self-defense to have that claim assessed by a judge at an evidentiary hearing before trial, rather than waiting until trial to have the matter decided by a jury. At the pretrial evidentiary hearing, the Statute first requires the defendant to make a prima facie claim of self-defense. If the defendant can do that, the burden then shifts to the prosecution to prove by clear and convincing evidence that the

defendant's use or threatened use of force was not justified. If the district court concludes that the State has not met its burden, the court will dismiss the criminal charges with prejudice. But if the court concludes the State did meet its burden, the case proceeds, and the defendant may still raise a claim of self-defense at trial.

¶2     In this case, defendant Jon Michael Clara was driving his SUV in Salt Lake City when his vehicle was rear-ended and then rammed repeatedly by a truck with a snowplow on the front of it (snowplow). The snowplow finally started to drive away. But it then stopped abruptly and began to turn to the right. Clara believed the snowplow was in the process of making a U-turn to come back and attack him or his passenger again. He fired a gun seven times in the direction of the snowplow. None of the shots hit the snowplow, but one bullet pierced the back window of a pickup truck that happened to be in the area. The bullet came within inches of hitting a young girl's head. Clara was arrested and charged with seven counts of felony discharge of a firearm.

¶3     Early in the criminal proceedings, Clara moved for an evidentiary hearing under the Pretrial Justification Statute. After the hearing, the district court ruled that Clara had made a prima facie claim of self-defense, and that the State had not disproved the self-defense claim by clear and convincing evidence. So the district court dismissed the criminal charges against Clara.

¶4     The State appeals. It argues that the district court should not have dismissed the charges against Clara because he failed to make a prima facie claim of self-defense at the evidentiary hearing, as required by the Pretrial Justification Statute. Specifically, the State contends that none of the evidence adduced at the hearing showed that Clara had a reasonable belief that the snowplow posed an imminent threat of harm because, when Clara fired the shots, the snowplow had not turned back around to face him.

¶5     We agree with the district court that Clara presented evidence sufficient to make a prima facie claim of self-defense. Clara testified that the snowplow struck his SUV four times with increasing intensity. Then, when the snowplow finally started to drive away, it skidded to a stop a mere fifty feet from Clara and started turning to the right. At that point, Clara believed his SUV was disabled and that his passenger was injured. Fearing that the snowplow was turning around to attack them again, Clara testified that he fired the shots as a warning to stop the snowplow driver from returning. On these facts, we agree with the district court that Clara presented evidence showing a reasonable belief that the

snowplow posed an imminent threat of death or serious bodily injury to him and his passenger. We affirm.

## BACKGROUND

¶6   Police responded to the scene of a shooting on 900 West just north of 100 South in Salt Lake City. A family had been driving in their pickup truck northbound on 900 West, when a bullet pierced the back window, travelled through the passenger cab, and exited through the windshield. The bullet came within inches of hitting a young girl's head. Glass was scattered across the backseat and the girl had glass in her hair. Thankfully, she was not physically injured.

¶7   Nearby, officers discovered an SUV with a damaged bumper and passenger side, facing the wrong way in the northbound lane of 900 West. Clara and a passenger were standing near the SUV. Clara told the officers that he had been driving the SUV when he was rammed repeatedly by a truck with a snowplow on the front of it. He explained that the snowplow finally started to drive away, but then stopped abruptly and appeared to be making a U-turn to come back at them. At that point, he shot seven times in the direction of the snowplow, hoping to warn the driver away.

¶8   Clara was arrested and charged with seven counts of felony discharge of a firearm.

*Criminal Proceedings*

¶9   Early in the criminal proceedings, Clara sought to invoke the recently enacted Pretrial Justification Statute, which allows for a district court to assess claims of self-defense at an earlier stage in a criminal case. *See* UTAH CODE § 76-2-309(3). The Statute provides that if a criminal defendant files a motion requesting a pretrial justification hearing, then the district court must hold an evidentiary hearing to "determine as a matter of fact and law whether the defendant was justified in the use or threatened use of force." *Id.* § 76-2-309(3)(a). At the evidentiary hearing, the defendant must first "make[] a prima facie claim of justification." *Id.* § 76-2-309(3)(b). If the court determines the defendant has made a prima facie claim, then "the state has the burden to prove by clear and convincing evidence that the defendant's use or threatened use of force was not justified." *Id.* If the State meets this burden, the defendant's motion is denied, the case proceeds, and the defendant may raise the issue of justification to the jury at trial. *Id.* § 76-2-309(3)(c)(iii). But if the State fails to meet its burden, the district

court must dismiss the relevant charges against the defendant. *Id.* § 76-2-309(3)(c)(i).

¶10 Clara moved for a pretrial justification hearing in the district court, asserting that he shot at the snowplow in self-defense under Utah Code subsection 76-2-402(2)(b). That subsection states,

> An individual is justified in using force intended or likely to cause death or serious bodily injury only if the individual reasonably believes that force is necessary to prevent death or serious bodily injury to the individual or another individual as a result of imminent use of unlawful force, or to prevent the commission of a forcible felony.

*Id.* § 76-2-402(2)(b).

*The Pretrial Justification Evidentiary Hearing*

¶11 In response to Clara's motion, the district court held an evidentiary hearing as required by the Pretrial Justification Statute. At the beginning of the hearing, the court explained the procedure that it had used in a prior hearing of this type, since "the process is new and the procedure is . . . a little bit new." The court stated that it had

> required the parties . . . to present starting with the defense—since the defense has an initial burden of making [a prima facie] showing, had all the parties put on all of their evidence, and then I simply made a determination at the end as to—as to Step No. 1, whether the . . . Defense met its burden of showing that self-defense may be an issue in the case, and then if so, making findings with respect to the State and its burden.

The parties agreed to this procedure. And Clara's counsel stated that he was "ready to proceed."

¶12 Defense counsel called Clara as the defense's first witness, followed by the passenger who was riding with Clara on the night in question, and some of the responding police officers. The State cross-examined each of Clara's witnesses, including Clara himself. The State did not call any witnesses of its own to testify at the hearing.

¶13 Clara and his passenger testified about the events leading up to the shooting. Clara had been driving his SUV eastbound on Euclid Avenue in Salt Lake City and was about to turn north onto

4

900 West. Suddenly, Clara's vehicle was rear-ended by the driver of a pickup truck that had a snowplow attached to its front. Thinking this was just an accident, Clara moved his vehicle to the side of the road.

¶14   But the snowplow struck Clara's vehicle again—this time with more intensity. The snowplow then hit Clara's vehicle a third time. The third strike caused Clara's SUV to spin around and face oncoming traffic. Finally, the snowplow hit the SUV a fourth time, "t-boning" it on the passenger side and causing some airbags to deploy.

¶15   At this point, the snowplow began driving away and Clara got out of his SUV. Based on the damage caused by the contact, Clara believed that his vehicle was inoperable. And due to the final blow to the passenger side, Clara believed that his passenger might be injured and trapped in the vehicle.

¶16 Once outside the vehicle, Clara noticed that the snowplow's brake lights were on, and he heard the snowplow "skid on the street" roughly fifty feet away. Then, to Clara's dismay, he saw the snowplow begin to turn to the right into "some business or driveway to make a U-turn." Once the snowplow began this maneuver, Clara believed it was turning around to hit him or his vehicle with the passenger still inside. Fearing for his and his passenger's lives, Clara pulled out a gun and fired seven rounds in the direction of the snowplow. According to video timestamps taken from a dashcam in Clara's SUV, only about six seconds passed between the final strike by the snowplow and when Clara began shooting.

¶17   When Clara fired at the snowplow, it had not turned all the way around. It was facing in a northeast direction, generally away from Clara and the SUV. Clara "was just aiming [toward the snowplow] to let [the driver] know if you come back this way . . . you're going to get shot." And although the snowplow was not facing Clara when he shot, he believed he had to fire his weapon before the snowplow had fully turned to face him because the "snowplow thing in front . . . [would] act[] like this bulletproof shield . . . . [T]hen I wouldn't have been able to do anything for myself or my passenger."

¶18   After Clara fired, the snowplow drove a little farther up the road, away from Clara. But it began to turn around a second time. Because the snowplow was farther away, Clara waited to see "what's [the driver] going to do." He did not shoot at the snowplow again. And the snowplow finally drove away.

¶19 Following the hearing, the court requested briefing from the parties regarding the application of the statute. The court explained its conclusion that "what the statute means by a prima facie showing is basically the showing that would be necessary to get past a motion for a directed verdict at trial. In other words, enough evidence that a juror acting reasonably could conclude that self-defense applies." The court noted that the more important issue was likely whether the State had met its burden to "show by clear and convincing evidence that self-defense does not apply." The court directed the State to file its memorandum first, and for Clara to then respond. The court then scheduled oral argument to be held after the memoranda were filed.

¶20 In their memoranda and at the subsequent oral argument, the parties did not object to the district court's description of the applicable legal standard. And neither party disagreed with the district court's conclusion that the "prima facie claim" Clara had to make at the evidentiary hearing was similar to the directed verdict standard.

¶21 On the merits, the State's primary argument was that there was no evidence showing that Clara's belief that the snowplow posed an imminent threat of harm was objectively reasonable. The State argued that Clara was "involved in a traffic accident that had ended by the time he discharged his firearm." The State contended that by the time Clara fired at the snowplow, any threat of harm had ended and his belief that the snowplow driver was turning around to attack again was mere speculation—making his belief objectively unreasonable. For his part, Clara referenced the evidence adduced at the earlier justification hearing and argued that when he fired at the snowplow, the threat to his safety was still ongoing, and he "believed that the vehicle was coming back at him."

*The District Court's Decision*

¶22 After considering the parties' memoranda and oral argument, as well as the evidence adduced at the hearing, the district court ruled that Clara had made a prima facie claim of self-defense. The court relied on a number of specific facts in arriving at its conclusion. First, to the court, the fact that the snowplow struck Clara's vehicle not once, but four times, "undermine[d] the idea that this was simply a traffic accident." The court further noted that "the position of the [snowplow] [and] its distance from [Clara] . . . [were] critical factors in determining whether [Clara] acted in self-defense." As to the position of the snowplow when Clara fired,

the district court highlighted Clara's statement that the snowplow "was either broadside to him or was facing . . . slightly away from him." And for the distance, the court relied on Clara's statement that when he fired the shots, "the [snowplow] was 50 feet away," or "approximately 16 yards."

¶23 Notably, the district court stated,

> If it was true that the [snowplow] was 50 feet away and the [snowplow] was facing or turning to face the defendant, then there would be little doubt that the defendant would be justified in shooting at the driver as a means to disable the [snowplow]. A vehicle could in a matter of seconds travel 16 yards, and a vehicle obviously could cause death or serious bodily injury to someone in the path of that vehicle.

¶24 The district court ultimately concluded that "it's pretty clear that the defendant has at least made a prima facie claim of justification in that using deadly force against the driver of the [snowplow] may have been necessary to avoid death or serious bodily injury to the defendant."

¶25 The court then addressed whether the State had met its burden to disprove Clara's prima facie claim of self-defense by clear and convincing evidence. In doing so, the district court considered some of the factors listed in Utah Code subsection 76-2-402(5). Relevant here, that subsection states, "In determining imminence or reasonableness . . . the trier of fact may consider: (a) the nature of the danger; (b) the immediacy of the danger; [and] (c) the probability that the unlawful force would result in death or serious bodily injury." UTAH CODE § 76-2-402(5).

¶26 The court found the nature of the danger posed by the snowplow to be "very high" because "an automobile is capable of causing death or serious bodily injury in a matter of seconds." As to the immediacy of the danger, the district court stated that "there is less danger involved here because there is no testimony and the defendant doesn't claim that the [snowplow] was either traveling toward him or was pointed toward him." The court found that this fact "undermine[d] . . . the imminence" of the threat posed by the snowplow.

¶27 With these factors in mind, the court ultimately concluded that the State failed to meet its burden to disprove Clara's self-defense claim by clear and convincing evidence. Accordingly, the district court granted Clara's motion and dismissed the charges.

¶28 The State appeals the decision. It makes a single objection to the district court's ruling. The State argues that Clara failed to show the objective reasonableness of his belief that the snowplow posed an imminent threat of death or serious bodily injury to him or his passenger. And thus, Clara did not make a prima facie claim of self-defense at the evidentiary hearing.

¶29 We have jurisdiction under Utah Code subsection 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶30 The only issue presented in this case is whether, in accordance with the Pretrial Justification Statute, Clara made a prima facie claim of self-defense at the pretrial evidentiary hearing. We review prima facie determinations for correctness. *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 13, 20 P.3d 388 ("[T]he determination of whether a party has made out a prima facie case is a question of law which we review for correctness, affording no deference to the trial court's judgment."), *abrogated on other grounds as recognized by A.S. v. R.S.*, 2017 UT 77, 416 P.3d 465.

## ANALYSIS

¶31 The State argues that the district court erred in ruling that Clara made a prima facie claim of self-defense at the evidentiary hearing. The State's primary objection is that the district court wrongly concluded Clara had shown that he reasonably believed the snowplow was about to attack again—or, in the parlance of the self-defense statute, that the snowplow was going to engage in the "imminent use of unlawful force." UTAH CODE § 76-2-402(2)(b). The State argues that "Clara fired too late or too soon," because he fired after the snowplow ended its assault and drove up the street, but before the snowplow made a sufficient movement indicating it was turning back in Clara's direction. For the reasons discussed below, we agree with the district court's ruling and affirm.[1]

---

[1] In describing the facts of this case, the State emphasizes that Clara put a young girl and her family in extreme danger when he fired seven shots up 900 West. None of the bullets hit the snowplow that rammed Clara's SUV. But one of the shots hit a pickup truck carrying three people who had nothing to do with the incident, and the bullet narrowly missed a young girl's head. This was what drew police officers to the scene in the first place. We agree that Clara's stray bullet endangered the girl and her family. But these

(continued . . .)

*The Pretrial Justification Statute*

¶32   The Pretrial Justification Statute states that "[u]pon motion of the defendant . . . , the court shall hear evidence on the issue of justification . . . and shall determine as a matter of fact and law whether the defendant was justified in the use or threatened use of force." UTAH CODE § 76-2-309(3)(a). Next, "[a]t the pretrial justification hearing, after the defendant makes a prima facie claim of justification, the state has the burden to prove by clear and convincing evidence that the defendant's use or threatened use of force was not justified." *Id.* § 76-2-309(3)(b). The State contends that Clara failed to make out a prima facie claim of self-defense at the evidentiary hearing, so the State should have never borne the burden of disproving Clara's claim by clear and convincing evidence.

¶33 The Statute does not define "prima facie." However, "prima facie" is a frequently used term of art that generally means "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." *See Prima Facie* (adj.), BLACK'S LAW DICTIONARY (11th ed. 2019). The term's meaning is also informed by the procedural posture in which it arises. *See, e.g., Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388, (explaining in the trial context that "[a] prima facie case has been made when evidence has been received at trial that, in the absence of contrary evidence, would entitle the party having the burden of proof to judgment as a matter of law"), *abrogated on other grounds as recognized by A.S. v. R.S.*, 2017 UT 77, 416 P.3d 465; *Blank v. Garff Enters. Inc.*, 2021 UT App 6, ¶ 26, 482 P.3d 258 (explaining that at the summary judgment stage, "[a] plaintiff's failure to present evidence that, if believed by the trier of

---

facts are not part of our analysis on appeal, not because they are not serious, but because the State has not raised an issue before us involving Clara's endangerment of the three uninvolved passers-by. Although courts in other jurisdictions have addressed circumstances where a defendant, acting in self-defense, has been charged with recklessly injuring innocent bystanders, *see, e.g., State v. Betts*, 514 P.3d 341, 349–52 (Kan. 2022), no such charges were filed here. And the State has not raised an issue on appeal as to whether Clara can be held criminally liable for recklessly endangering the young girl and her family. However, the absence of these facts from our analysis is not intended to minimize the seriousness of the family's experience.

fact, would establish any one of the elements of the prima facie case justifies a grant of summary judgment to the defendant" (cleaned up)).

¶34 The district court concluded that in this procedural posture, the Statute's requirement that Clara make out a prima facie claim at the evidentiary hearing was similar to what is required to survive a motion for a directed verdict. And neither party objected to this.[2] For a directed verdict under Utah Rule of Civil Procedure 50(a), a court may dismiss a claim if the factfinder "would not have a legally sufficient evidentiary basis to find for the party on that issue." "[A] party who moves for a directed verdict has the very difficult burden of showing that *no* evidence exists that raises a question of material fact." *Mahmood v. Ross*, 1999 UT 104, ¶ 18, 990 P.2d 933 (cleaned up). "Where there is any evidence that raises a question of material fact, no matter how improbable the evidence may appear," a directed verdict is improper. *Kleinert v. Kimball Elevator Co.*, 905 P.2d 297, 299 (Utah Ct. App. 1995). Thus, this standard requires a party to clear a low bar by adducing at least some evidence on each element of a claim.

*The Elements of a Self-Defense Claim*

¶35 The elements of self-defense are found in Utah Code subsection 76-2-402(2)(b), which states, "An individual is justified in using force intended or likely to cause death or serious bodily injury only if the individual reasonably believes that force is [1] necessary to prevent death or serious bodily injury to the

---

[2] In their briefing, the parties provided extensive argument regarding the procedure required for a defendant to "make[] a prima facie claim of justification." UTAH CODE § 76-2-309(3)(b). But these issues were not preserved in the district court. The district court explained to the parties how it would proceed in the evidentiary hearing, and the parties agreed. Clara then went first at the evidentiary hearing and put on evidence of his version of events. There was no debate or discussion about whether this was the correct way to proceed. Clara's counsel agreed to this procedure, stating, "Great. That's all I needed to know. And then . . . we're ready to proceed." Then after the hearing, when the district court asked for briefing from the parties, it explained its understanding of the term "prima facie claim" in the Statute. *See supra* ¶¶ 11–20. Again, neither party objected to the court's explanation or directions. Accordingly, we do not address the unpreserved issues raised by the parties.

individual or another individual [2] as a result of imminent use of unlawful force . . . ."

¶36 The key dispute in this case is whether Clara "reasonably believe[d]" that the danger posed by the snowplow was "imminent." *See id.* We have stated that the imminence requirement "distinguishes lawful defensive force from two forms of unlawful force: that which comes too soon and that which comes too late." *State v. Berriel*, 2013 UT 19, ¶ 14, 299 P.3d 1133. Accordingly, "[d]efensive force is . . . an act of emergency that is temporally and materially confined[] with the narrow purpose of warding off the pending threat." *Id.* (cleaned up). In *Berriel*, we focused on common definitions to interpret "imminence" in delineating this temporal confinement. We noted that "imminent danger" was defined as "an immediate, real threat to one's safety" and as "the danger resulting from an immediate threatened injury," and that "imminent" was defined "as 'about to occur at any moment' and as 'impending.'" *Id.* (cleaned up).

¶37 Further, the imminence element has both a subjective and an objective component. At the time defensive force is used, the defendant must have had an actual *subjective* belief in the imminence of the threat of unlawful force *and* the defendant's belief must have been *objectively reasonable. Cf. State v. Sorbonne*, 2022 UT 5, ¶ 42, 506 P.3d 545 (noting, in the context of the necessity element of self-defense, that a defendant's reasonable belief in the necessity of defensive force has both a subjective and an objective component). The objective component is satisfied if the proverbial reasonable person in the defendant's position would have also believed that the threat of unlawful force was imminent.

¶38 We address the subjective and objective components of Clara's imminence showing in turn.

### The Subject Belief Requirement

¶39 We conclude Clara adduced evidence sufficient to make a prima facie showing that he had an actual, subjective belief that the snowplow posed an imminent threat to him and his passenger. Clara testified that once he exited his vehicle, he saw the snowplow stop about fifty feet away and "start[] turning right, like, you know, into like some business or driveway *to make a U-turn*." (Emphasis added.) And in response to the question, "So you believe[d] this . . . [snowplow] was U-turning," Clara responded, "Yes." Clara also testified that he thought the snowplow was "coming back to hit or run over me . . . or hit my vehicle with my passenger . . . in it." And in response to being asked, "So you[] [were] concerned about your

safety and your passenger's safety," Clara responded, "Absolutely." Finally, Clara testified that he believed he had to shoot at the snowplow before it was fully turned around and facing him because the "snowplow thing in front of [the snowplow] . . . acts like [a] bulletproof shield."

¶40 The State cites a line from Clara's testimony that it argues demonstrates Clara did not have a subjective belief that the threat from the snowplow was imminent. After Clara shot at the snowplow, it drove farther away and then began to turn around a second time. When asked why he did not shoot at the snowplow again, Clara testified, "[T]hat's some distance[,] [l]et me see, you know, what's [the snowplow driver] going to do." For the State, this testimony belies any subjective belief Clara claimed to have had because he paused the second time to assess the situation, but not the first.

¶41 We reject this argument. Whether Clara had a different belief the second time the snowplow stopped (a greater distance away and following the initial volley of defensive shots) does not negate his testimony about his belief when he exercised the defensive force. While the State may believe that it would have been a better choice for Clara to wait to fire the first time, the subjective component of the imminence element does not turn on the quality of the defendant's decision-making. Clara testified that the first time the snowplow stopped, he believed it was turning around and thus posed an imminent threat of harm. Accordingly, Clara adduced evidence regarding the subjective component of the imminence element.

*The Objective, Reasonable Belief Requirement*

¶42 We also agree with the district court's finding that Clara made a prima facie showing of the imminence element's objective component. The State argues that the evidence regarding the imminence of the harm posed by the snowplow does not show that Clara's belief was objectively reasonable because his belief rested entirely on prediction and speculation about what the snowplow might do in the future. To the State, "Clara's entire justification defense rests on his subjective feelings, his speculation about the driver's future intentions, but w[as] not based on any externally verifiable phenomena perceivable by others that would lead a reasonable person to believe another attack was imminent." In all, Clara "simply guessed that another attack might come."

¶43 The State also contends that when the district court analyzed whether the State had disproven self-defense by clear and

convincing evidence, the court "note[d] a total absence of evidence on immediacy." The district court stated that "there is no testimony[,] and the defendant doesn't claim that the [snowplow] was either traveling toward him or was pointed toward him. So that undermines . . . the imminence . . . ." To the State, "[t]hat single fact should have been the end of Clara's self-defense motion."

¶44 The "*reasonably* believe[s]" language in Utah Code subsections 76-2-402(2)(a) and (b) "introduces a component of objectivity" to the self-defense analysis. *State v. Sorbonne*, 2022 UT 5, ¶ 28, 506 P.3d 545. In *Sorbonne*, which focused on the necessity element of self-defense, we noted that "the reasonableness inquiry is a hypothetical one, which asks [us] to decide whether a person in the defendant's circumstances would have reasonably believed that a threat or use of force was necessary." *Id.* ¶ 29. Although we addressed the necessity element in *Sorbonne*, the same analysis applies to the question of whether a person "reasonably believes" the use of unlawful force against them is imminent. This inquiry is an objective one—requiring courts to ask whether a reasonable person in the defendant's position would have believed they were facing an imminent use of unlawful force.

¶45 We conclude there is evidence in the record supporting the district court's finding that Clara reasonably believed another attack by the snowplow was imminent. First, the snowplow had already rammed Clara's SUV four times, with the intensity of the strikes increasing in degree. Second, Clara testified that after the fourth hit, some airbags in the vehicle deployed. He believed his SUV was inoperable and that his passenger might be injured and unable to get out. Third, after the snowplow finally started to drive away, it almost immediately came to an abrupt stop. Within seconds of driving away, Clara saw the snowplow's brake lights come on, and he heard it "skid on the street" and come to a stop about fifty feet away. And fourth, Clara saw the snowplow begin to make a right turn either into a business or a driveway of some sort. It was at this point that Clara fired his gun.

¶46 The State argues that Clara's belief was unreasonable unless "the [snowplow] was in fact pointed more south than north," or at least "east-southeast." So in the State's view, the fact that the snowplow was facing "north or northeast made [Clara's showing] insufficient" to make a prima facie claim as to imminence. The State provided the following example at oral argument:

> This morning I was crossing the street . . . and I saw a
> car on State Street make a U-turn at the left turn

light. . . . And it occurred to me, if I was behind that car . . . and I watched that car make a U-turn, at what point in his U-turn would I have been able to perceive as an objectively verifiable phenomenon that this was a U-turn and not a left turn? And the only way to tell, the only difference . . . to the observer is once the driver reverses orientation, goes beyond the left turn to something more like a reverse orientation.

In other words, the State contends that for Clara's belief that he was in imminent danger to have been objectively reasonable, the snowplow would "have [had] to cross the east orientation and go something south of east in his orientation."

¶47 But this hypothetical highlights the importance of the surrounding circumstances that informed Clara's belief. The person observing the car in the hypothetical could reasonably perceive the car's intentions differently if, like Clara's experience, the car making the turn had just hit the person four times. And then, as the person watched with relief as the car finally started to drive away, it would seem reasonable for the person to be fear-stricken if the car stopped abruptly within seconds of departing and began to make a turn.

¶48 The law does not expect the hypothetical reasonable person in such a fraught scenario to perceive, in a split second, whether a vehicle has turned just enough to indicate it is making a U-turn. The reasonable person we look to in making such objective inquiries is not an infallible individual who has the benefit of hindsight or plentiful time to contemplate the imminence of a given threat of harm in the moment. "Detached reflection cannot be demanded in the presence of an uplifted knife." *Brown v. United States*, 256 U.S. 335, 343 (1921) (Holmes, J.).

¶49 And when we apply this understanding of the reasonable person standard here, we are persuaded that a reasonable person in Clara's shoes could have believed that the snowplow was an imminent threat. Clara had just been inside an SUV that was rammed four times by the snowplow. When the snowplow finally began to drive up the road, it skidded to a stop within seconds and began to turn right into a business on the side of the road. In this moment, a reasonable person could believe that the demonstrably violent snowplow driver had reengaged and was going to attack again. And Clara did not know if he could get his passenger out of the snowplow's way in time, considering the state of his SUV and the passenger.

14

¶50 The State points out the district court's observation that there was no evidence showing the snowplow turned all the way around to face Clara. And we agree that this weighs against a finding of imminence when determining whether the State disproved that Clara acted in self-defense. But viewed in factual context, and in light of the prima facie standard, this deficiency does not negate all the evidence that cuts in the other direction. And that evidence suffices to make a prima facie showing that Clara reasonably believed the snowplow posed an imminent threat.

## CONCLUSION

¶51 We conclude that the district court did not err in ruling that Clara made a prima facie claim of self-defense at the evidentiary hearing. We affirm.

———————